688 So.2d 313 (1996)
Terance VALENTINE, Appellant,
v.
STATE of Florida, Appellee.
No. 84472.
Supreme Court of Florida.
December 19, 1996.
Rehearing Denied February 19, 1997.
*314 James Marion Moorman, Public Defender and Douglas S. Connor, Assistant Public Defender, Tenth Judicial Circuit, Bartow, for Appellant.
Robert A. Butterworth, Attorney General and Carol M. Dittmar, Assistant Attorney General, Tampa, for Appellee.
SHAW, Justice.
We have on appeal the judgment and sentence of the trial court imposing the death penalty on Terance Valentine. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the first-degree murder conviction and sentence of death.
The underlying facts of the crime are set out in this Court's initial opinion on direct appeal:
Livia Romero married Terance Valentine while she was a teenager in Costa Rica and the couple emigrated to the United States in 1975, settled in New Orleans, and adopted a child. After seeking to divorce Valentine in 1986, Romero married Ferdinand Porche and the family moved to Tampa, where they began receiving telephoned threats from Valentine. On September 9, 1988, Valentine armed himself, forced his way into the family's home, wounded Porche, drove both Romero and *315 Porche to a remote area and shot them. Romero survived and immediately told police Valentine was her assailant.
Several weeks after being released from the hospital, Romero began receiving telephone calls from Valentine, which she taped using a telephone and recorder supplied by police. Valentine was eventually arrested and charged with armed burglary, [two counts of] kidnapping, grand theft, first-degree murder and attempted first-degree murder.
Valentine v. State, 616 So.2d 971, 972 (Fla. 1993).
Valentine was convicted on all counts, the jury recommended death on the first-degree murder charge by a ten-to-two vote, and the judge imposed a sentence of death, finding three aggravating circumstances[1] and three mitigating circumstance.[2] This Court reversed the conviction and vacated the sentence due to a jury selection error under State v. Neil, 457 So.2d 481 (Fla.1984). On retrial, Valentine was again convicted on all counts but this time he waived the jury advisory sentence and presented mitigating evidence directly to the judge. The trial court described the brutality of the crime:
On September 9, 1988, Ferdinand Porche returned to his home in mid-afternoon expecting to meet his pregnant wife and small child. Instead he was greeted by a bullet in the back which [severed his spinal cord and] rendered him paralyzed from the waist down. Mr. Porche was then confronted by Mr. Valentine who announced "this is my revenge." Mr. Porche was forced to crawl into a bedroom where he found his wife nude, bound, and gagged and his baby crying and covered in blood. Mr. Valentine then pistol whipped Mr. Porche. Mr. Porche's face was lacerated, his jaw was broken, and several teeth were knocked out. According to the medical examiner there were at least three separate blows to Mr. Porche's face. After administering this beating Mr. Valentine made his purpose clear, announcing, "I'm gonna kill you, but you're gonna suffer. This is not going to be easy." Further tortuous acts included stabbing Mr. Porche in the buttocksthe knife stopping only because it struck bone, kicking Mr. Porche in the chest, and dragging him after he was bound hand and foot with [baling] wire. The medical examiner testified that all of the above injuries occurred while Mr. Porche was alive, that none was immediately life threatening, and none would immediately result in a loss of consciousness. Mrs. Porche testified that Mr. Porche told her he was in so much pain that he did not know why he did not lose consciousness. Mrs. Porche testified she could feel him touch her as if to reassure her while they were in the back of the Blazer being transported [to an isolated area].
While the fatal gunshot resulted in near instantaneous loss of consciousness and death, the ordeal leading up to his death was quite lengthy. Mr. Porche was beaten and degraded in his home. Trussed like an animal he was kidnapped and taken on a nine-mile trip to his slaughter. Either due to the gunshot wound to his spine or through the stress of the ordeal Mr. Porche lost control of his bowels and was covered with his own excrement.
Paralyzed and bound hand and foot with wire there was nothing Mr. Porche could do to save himself. Nor was there anything he could do to protect his wife, who he knew was the ultimate object of Mr. Valentine's barbarous intent. Nor could he know what would happen to his ten-month-old daughter or what would become of Mrs. Porche's adopted child. The horror, terror and helplessness that Ferdinand Porche experienced prior to being *316 shot in the eye at point blank range are evident.
The court sentenced Valentine to consecutive terms of imprisonment on the non-capital offenses[3] and imposed a sentence of death on the first-degree murder conviction based on four aggravating circumstances[4] and four mitigating circumstances.[5] Valentine raises nine issues.[6]
Valentine first claims that he and Romero were never legally divorced and that the husband-wife evidentiary privilege thus barred portions of Romero's testimony. We disagree. The privilege provides:
(1) A spouse has a privilege during and after the marital relationship to refuse to disclose, and to prevent another from disclosing, communications which were intended to be made in confidence between the spouses while they were husband and wife.
§ 90.504, Fla. Stat. (1993). An exception to the privilege permits testimony in certain cases of inter-spousal crime:
(3) There is no privilege under this section:
. . . .
(b) In a criminal proceeding in which one spouse is charged with a crime committed at any time against the person or property of the other spouse....
§ 90.504(3)(b), Fla. Stat. (1993). Valentine contends that although Romero's testimony concerning the attempted murder of her is embraced within the above exception to the privilege, her testimony concerning Porche's murder is not and thus is shielded by the privilege.
We find this claim to be without merit. The plain language of the above exception encompasses precisely the situation claimed by Valentine to exist in the present case: This is a proceeding (a criminal trial) in which one alleged spouse (Valentine) is charged with committing a crime (attempted first-degree murder) against the person of the other spouse (Romero). This reading of the exception comports with the basic policy underlying the privilege, which is to promote marital harmony. The construction urged by Valentine, on the other hand, would make a mockery of that policy, for howor why would the state possibly seek to promote marital harmony between a killer and his would-be victim?[7] We find no error.
*317 Valentine next points out that when he was apprehended by the FBI near New Orleans, officers were acting on a warrant later determined to be flawed, resulting in his illegal arrest. He claims that his statement to Detective Fernandez of the Hillsborough County Sheriff's Office was tainted by his unlawful arrest. We disagree. The United States Supreme Court has addressed this issue:
The question whether a confession is the product of a free will ... must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The Miranda warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, and particularly, the purpose and flagrancy of the official misconduct are all relevant.
Brown v. Illinois, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 2261-62, 45 L.Ed.2d 416 (1975)(footnotes and citation omitted).
In the present case, the record supports the trial court's finding that Valentine's statement was sufficiently attenuated from the illegal arrest to purge it of any possible taint. The statement was made nearly two days after the arrest; Valentine had been advised of his rights repeatedly; he had been taken before two federal magistrates; and the nature of the illegality itself was inadvertent and nonflagrant, which Valentine concedes.[8] We find no error.
Evidence was introduced showing that footprints made by an athletic-type shoe were found on the ground outside Romero's home, on the sliding glass door that had been kicked in, and on the ground in the open field a few feet from the abandoned Blazer. Valentine claims that this evidence should not have been admitted because it was insufficiently linked to him. We disagree. Romero testified that Valentine was wearing tennis shoes at the time of the crime. She gave a description of the perpetrator, including his shoes, to the officer at the scene. Further, the footprints show the perpetrator's path of access into the house and presence in the immediate area of the killing, thus substantiating Romero's version of events. We find no error.
Valentine next argues that his conviction for attempted first-degree murder is error. We agree. The jury was instructed on two possible theories on this count, attempted first-degree felony murder and attempted first degree premeditated murder, and the verdict fails to state on which ground the jury relied. After Valentine was sentenced, this Court held that the crime of attempted first-degree felony murder does not exist in Florida. See State v. Gray, 654 So.2d 552 (Fla.1995). Because the jury may have relied on this legally unsupportable theory, the conviction for attempted first-degree murder must be reversed. See Griffin v. United States, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991).
This error, we conclude, has no effect on the sentence of death since Valentine was convicted of three other violent felonies (i.e., armed burglary and two counts of kidnapping) arising from the same episode; any one of these other crimes would support the "prior violent felony" aggravating circumstance. Further, even if this aggravating circumstance were not present, we are convinced beyond a reasonable doubt that the trial court still would have imposed the death penalty given the nature and extent of the *318 remaining aggravating and mitigating circumstances. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986). As the trial court pointed out, this was an extraordinarily brutal crime.
The remainder of Valentine's claims either were not preserved[9] or are without merit.[10] Accordingly, we reverse the conviction for attempted first-degree murder and vacate the sentence on that count. We affirm the remaining convictions and sentences, including the first-degree murder conviction and sentence of death.
It is so ordered.
OVERTON, HARDING and ANSTEAD, JJ., concur.
GRIMES, J., concurs with an opinion, in which OVERTON and WELLS, JJ., concur.
WELLS, J., concurs in result only as to the conviction and concurs as to the sentence.
GRIMES, Justice, concurring.
If Valentine's comments and letters to Romero fell within the scope of section 90.504, Florida Statute (1993), I believe Valentine would have been at least entitled to a jury instruction that such communications could not be considered with respect to the charge that he murdered Porche. However, the threats to maim and kill Porche came at a time when Valentine and Romero had been separated for over a year, and Valentine thought Romero had now married Porche. A communication made under these circumstances is not one which section 90.504 was designed to keep confidential. When it is clear, as in this case, that the husband and wife are permanently separated, the policy which underlies the marital privilege no longer exists, and there is no reason why communications between them should not be admissible as any other evidence. See United States v. Treff, 924 F.2d 975 (10th Cir.), cert. denied, 500 U.S. 958, 111 S.Ct. 2272, 114 L.Ed.2d 723 (1991); United States v. Frank, 869 F.2d 1177 (8th Cir.), cert. denied, 493 U.S. 839, 110 S.Ct. 121, 107 L.Ed.2d 82 (1989); United States v. Fulk, 816 F.2d 1202 (7th Cir.1987); In re Witness Before Grand Jury, 791 F.2d 234 (2d Cir.1986); People v. Mohammed, 122 Misc.2d 504, 470 N.Y.S.2d 997 (1984).
OVERTON and WELLS, JJ., concur.
NOTES
[1] The trial court found the following: Valentine had been convicted of a violent felony, i.e., the contemporaneous attempted murder; the murder was committed in the course of a kidnapping; the murder was both cold, calculated and premeditated, and heinous, atrocious or cruel.
[2] The court found the following: Valentine had no significant history of prior criminal activity; Valentine's age was forty-one; Valentine had supported his family, was a good father, had not mistreated his wife before, was a well-known basketball player and coach who took an interest in children, and was known to be a nonviolent and close family man.
[3] The court sentenced Valentine to life imprisonment on the armed burglary count; life imprisonment for the kidnapping of Romero; life imprisonment for the kidnapping of Porche; five years' imprisonment on the grand theft count; and thirty years' imprisonment on the attempted murder charge.
[4] The court found the following: Valentine had been convicted of a prior violent felony; the murder was committed during the course of a burglary and kidnapping; the murder was heinous, atrocious, or cruel; and the murder was committed in a cold, calculated and premeditated manner.
[5] The court gave slight weight to each of the following: The crime was out of character for the defendant and indicated a single period of aberrant behavior; the defendant is a skilled worker who can be expected to make a contribution to the prison system; the defendant has a large family that will provide love and support for him while he is in prison; the defendant offered no resistance when arrested, has adapted well to incarceration, is likely to function well in prison, has been a model inmate with no disciplinary problems, and has exhibited appropriate behavior in jail and court.
[6] Valentine claims the trial court erred in addressing the following matters: 1) in ruling that the husband/wife privilege was inapplicable to bar Romero's testimony on Porche's murder; 2) in denying his motion to suppress his statements to Detective Fernandez; 3) in denying his motion to strike the expert's footprint testimony as too speculative; 4) in declining his motion to appoint a jury selection expert; 5) in denying his motion to grant him the concluding argument to the jury in spite of his presentation of alibi witnesses; 6) in giving the standard reasonable doubt instruction; 7) in convicting him of attempted first-degree murder because it may rest on attempted felony murder, a nonexistent crime; 8) in finding that the murder was committed in a cold, calculated and premeditated manner; 9) in failing to find several mitigating circumstances.
[7] Valentine's contention that Romero's testimony is protected because it falls within an exception that was deliberately eliminated by the legislature in 1978 is specious. The earlier exception provided:

(3) There is no privilege under this section:
. . . .
(b) In a criminal proceeding in which one spouse is charged with:
. . . .
2. A crime committed at any time against the person or property of a third person, which crime was committed in the course of committing a crime against the person or property of the other spouse.
§ 90.504, Fla. Stat. (1977). The policy underlying the privilege dictates that this exception was applicable in those cases where one spouse committed a crime against both a third person and the other spouse but was charged in the pending proceeding only with the crime against the third person. That is not the case in the present proceeding.
[8] The arresting officers relied on a federal warrant that was later determined by the trial court to be supported by inadequate evidence.
[9] Issue 4) was not preserved.
[10] Issues 5), 6), 8) and 9) are without merit.