[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 2, 2003
THOMAS  K. KAHN
CLERK

No. 01-12940

D. C. Docket No. 99-00889 CV-J-25

HAROLD B. CLARK,

Petitioner-Appellant,

versus

JAMES CROSBY,
CHARLIE CRIST, Florida Attorney General,

Respondents-Appellees.

Appeal from the United States District Court
for the Middle District of Florida

**(July 2, 2003)**

Before DUBINA, RONEY and COX, Circuit Judges.

COX, Circuit Judge:

Harold B. Clark appeals the district court's denial of his 28 U.S.C. § 2254 petition. Clark was convicted in a Florida state court of attempted first-degree murder and burglary. In his habeas petition, Clark argues that his attempted murder conviction violates the Due Process Clause and must be set aside because the jury's general verdict may have been based on the "legally inadequate" theory of attempted felony murder. He also argues that he was denied effective assistance of appellate counsel. For the following reasons, we affirm the district court's denial of Clark's first claim, but we vacate the district court's denial of his ineffective assistance of appellate counsel claim and remand for further proceedings.

## I. BACKGROUND & PROCEDURAL HISTORY

Beginning in 1991, Harold Clark was involved in a relationship with a woman named Patricia Ann Lee. They lived together for some time, but their relationship eventually deteriorated and Lee asked Clark to move out of her house. Clark continued to visit her for several months, but she told him that he was interfering in her life. On March 26, 1993, Clark peered through Lee's bedroom window with a flashlight, and, one day later, he went to her place of employment, where she told him that they could no longer be friends. The next day, Clark went to Lee's home and knocked on her bedroom window, and she threatened to call 911 if he did not leave.

The following morning, Clark entered Lee's house, went into her bedroom, woke her up, and slit her throat with a knife. Fortunately, Lee's wounds were not fatal.

The State of Florida ("the State") filed an information charging Clark with attempted first-degree murder, based on a premeditation theory, and burglary. Clark claims to have objected, both before trial and during the charge conference, to the State's presentation of a felony murder theory of attempted murder on the ground that such a theory was not charged in the information. (At the time of Clark's trial, attempted felony murder was a permissible ground for conviction under Florida law.[1]) The court overruled Clark's objections. The State relied on both a premeditation theory and a felony murder theory during summation, and the court charged the jury on both theories.

The jury returned a general verdict finding Clark guilty of attempted first-degree murder and burglary. The verdict did not indicate whether the attempted murder conviction was based on the State's premeditation theory or its felony murder

---

[1] *Amlotte v. State*, 456 So. 2d 448, 449 (Fla. 1984), *overruled by State v. Gray*, 654 So. 2d 552, 552-53 (Fla. 1995).

theory.[2] Clark was sentenced to a 35-year term of imprisonment on the murder charge and a consecutive 15-year term on the burglary charge.

Clark appealed his convictions and sentences to the First District Court of Appeal, raising issues unrelated to those presented in this appeal. Clark's counsel filed an initial appellate brief in December 1994 and filed a reply brief in January 1995. On May 4, 1995, while Clark's appeal was still under consideration, the Florida Supreme Court held in *State v. Gray*, 654 So. 2d 552 (Fla. 1995), that the crime of attempted felony murder no longer existed in Florida. *Id.* at 552-53. In reaching this conclusion, the Florida Supreme Court instructed that "[t]his decision must be applied to all cases pending on direct review or not yet final." *Id.* at 554. Clark's appellate counsel did not bring the *Gray* decision to the appellate court's attention, and on May 23, 1995, less than three weeks after *Gray* was issued, the First District Court of Appeal affirmed Clark's convictions and sentences per curiam without a written opinion. *Clark v. State*, 654 So. 2d 1166 (Fla. Dist. Ct. App. 1995) (table).

---

[2] The dissent concludes that the jury did not convict Clark of attempted felony murder. But we find that it is impossible to determine, based on a reading of the jury's general verdict, whether Clark was convicted on a felony murder theory or a premeditation theory. There is substantial evidence of premeditation, but there is also substantial evidence that would support a felony murder conviction (particularly in light of the fact that the jury actually convicted Clark of a felony).

After his direct appeal was unsuccessful, Clark filed a petition for a writ of habeas corpus in the First District Court of Appeal. In his petition, Clark alleged that he did not receive effective assistance of appellate counsel, arguing under the two-part performance-and-prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), that his counsel's failure to raise the *Gray* decision rendered his counsel's performance constitutionally deficient and that this deficiency caused prejudice.[3] In response, the State conceded that Clark's appellate counsel did not move to re-open, re-brief, or expand the appeal after *Gray*, nor did counsel file pleadings in response to the *Gray* decision. Regarding *Strickland*'s performance inquiry, the State wrote, "In the absence of an evidentiary hearing, it is not possible to determine whether counsel was aware of the decision or whether he had a tactical reason for not responding. . . . No 'prejudice' is apparent on this record, however, so the issue of 'error' [i.e., deficient performance] does not require [clarification]." (R.1-9, Ex. L at 7-8.) The State invited the court to deny Clark's petition based on *Strickland*'s prejudice prong, arguing that an evidentiary hearing was not required to resolve this question. The habeas court did not conduct an

---

[3]     Under Florida law, the proper vehicle for asserting an ineffective assistance of appellate counsel claim is a petition for a writ of habeas corpus directed to the appellate court that considered the direct appeal. *Richardson v. State*, 624 So. 2d 804, 804 (Fla. Dist. Ct. App. 1993); *Dinkins v. State*, 600 So. 2d 1295, 1296 (Fla. Dist. Ct. App. 1992).

5

evidentiary hearing, did not issue findings of fact or conclusions of law, and summarily denied Clark's petition without a written opinion.

Clark then filed a motion for post-conviction relief in state circuit court pursuant to Florida Rule of Criminal Procedure 3.850. In his Rule 3.850 motion, Clark made three arguments: (1) his attempted murder conviction may have been based on a theory of attempted felony murder, a non-existent crime; (2) he was denied effective assistance of trial counsel; and (3) the imposition of consecutive sentences was improper. Clark also attempted, to some extent, to argue his ineffective assistance of appellate counsel claim during the Rule 3.850 proceedings, even though that claim was not formally included in his Rule 3.850 motion.

The circuit court conducted an evidentiary hearing. At the hearing, Clark's appellate counsel testified about his failure to raise the sentencing issue (the imposition of consecutive sentences) on direct appeal. Clark's counsel testified that he did not raise the sentencing issue in his briefs, and that he could not raise the issue in a motion for rehearing because new issues may not be raised in such a motion. This prompted a follow-up question to Clark's counsel about his failure to bring *Gray* to the appellate court's attention, to which he responded that he did not raise the *Gray*

decision because the issue was not raised at trial or in the initial appellate brief.[4]

Following the evidentiary hearing, the circuit court denied the three claims presented in Clark's Rule 3.850 motion, but the court ruled that Clark's ineffective assistance of appellate counsel claim, to the extent it was presented during the Rule 3.850 proceeding, was not cognizable in a Rule 3.850 motion. *See Vining v. State*, 827 So. 2d 201, 216 (Fla. 2002); *supra* note 2.

Clark appealed the denial of his Rule 3.850 motion to the First District Court of Appeal. The appellate court reversed the circuit court in part, concluding that the

---

[4]      The pertinent part of the evidentiary hearing is set forth below:

Q:  And you didn't raise [the sentencing issue] on rehearing?  Could you raise an issue like that on rehearing?

[Clark's appellate counsel]:  Absolutely not.  The rule in Florida is absolutely clear. If you do not raise an issue in the inital [sic] brief, you cannot raise a new issue in rehearing.
        In fact, when I was first an appellate attorney I attempted to do that in the appellate court, and they struck my motion for rehearing because you cannot raise a new issue on rehearing.  If it's not in the initial brief, you cannot raise it later.

Q: Okay.  So that would apply also to the *Gray* decision, you couldn't raise that later in the rehearing?

[Clark's appellate counsel]:  That's absolutely correct.  I could not raise the *Gray* issue because it was not raised.  Well, first of all, the reason why I didn't raise the *Gray* issue was it was not objected to at the trial level.  But, secondly, even if it was, if I did not raise it in the initial brief, I cannot raise a new issue.
        Of course, you've got to realize, on the *Gray* issue, my brief was filed seven to eight months before the *Gray* case was decided.

(R.1-9, Ex. T at 85-86.)

7

imposition of consecutive sentences was erroneous, but the court ruled that there was no merit to the remaining arguments presented in Clark's Rule 3.850 motion and rejected these arguments without discussion. Clark was resentenced by the circuit court to a 30-year term of imprisonment on the murder charge and a concurrent 15-year term on the burglary charge.

In 1999, Clark timely filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 in federal district court. In his § 2254 petition, Clark challenged his conviction on three grounds: (1) the jury was permitted to convict him on a charge of a nonexistent crime, attempted felony murder; (2) he was denied the effective assistance of appellate counsel; and (3) he was denied the effective assistance of trial counsel. Without conducting an evidentiary hearing, the district court denied Clark's § 2254 petition.

After the district court denied Clark's application for a certificate of appealability (COA), a judge of this court granted a COA on Clark's claim that he might have been convicted of a non-existent crime, but denied a COA on any other issues. Later, Clark renewed his motion for a COA on his ineffective assistance of appellate counsel claim, but his motion was denied, as was his motion for reconsideration. Following oral argument, however, we granted his request for a COA on the ineffective assistance of appellate counsel claim and asked both parties

8

to file supplemental briefs on this issue. *See Jones v. United States*, 224 F.3d 1251, 1256 (11th Cir. 2000) (expanding the COA to include a previously uncertified issue based on the petitioner's explicit request to expand the COA); 11th Cir. R. 27-1(g) (noting that the merits panel may alter, amend, or vacate a ruling by a single judge or a motions panel).

## II.  ISSUES ON APPEAL

(1)  Whether appellant was convicted of attempted first-degree felony murder and, if so, did this conviction violate his constitutional rights.

(2)  Whether the district court erred in denying relief on Clark's claim that he was denied effective assistance of appellate counsel in violation of his constitutional rights.

We limit our consideration to these two issues, as we must. *Murray v. United States*, 145 F.3d 1249, 1251 (11th Cir. 1998).

## III.  STANDARDS OF REVIEW

We review de novo the district court's dismissal of a § 2254 petition. *Brownlee v. Haley*, 306 F.3d 1043, 1058 (11th Cir. 2002).  We review the district court's factual determinations for clear error, and we must affirm the court's factual findings unless the record lacks "substantial evidence" to support the court's determinations. *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1289 (11th Cir. 2002).  An

ineffective assistance of appellate counsel claim presents a mixed question of law and fact, and we review such a claim de novo. *Brownlee*, 306 F.3d at 1058.

## IV. DISCUSSION

Under the Anti-Terrorism and Effective Death Penalty Act, this court may entertain a state prisoner's petition for a writ of habeas corpus only on the ground that the prisoner is in state custody in violation of the Constitution or laws and treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not grant a petition for a writ of habeas corpus to a state prisoner on any claim that has been adjudicated on the merits in state court unless the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d); *Washington v. Crosby*, 324 F.3d 1263, 1265 (11th Cir. 2003). Clark presents two arguments, and we address each argument in turn.

A. *Due Process Claim*

First, Clark contends that the state court's decision to allow the general verdict to stand, even though the verdict might have been based on a "legally inadequate" theory of attempted felony murder, was contrary to clearly established federal law set forth in the Supreme Court's Due Process jurisprudence. This court has held that a

10

state court decision is contrary to clearly established federal law under § 2254(d)(1) if it applies a rule that contradicts the governing law as set forth by United States Supreme Court cases or if the state court, in a case with facts that are indistinguishable from those in a decision of the Supreme Court, reaches a different conclusion. *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000).[5]

Clark argues that the state court applied a rule that contradicts governing law established by the Supreme Court. He asserts that his murder conviction might have been based on a theory of attempted felony murder,[6] which he contends is a "legally inadequate" theory under Florida law after *Gray* and therefore violates the Due Process Clause. To support his argument, Clark cites a line of cases in which the Supreme Court has addressed the proper treatment of general jury verdicts when one of the possible bases for conviction is infirm. These cases warrant closer examination, because they conclusively show that the Supreme Court has *not* clearly established that a general verdict that might have been based on a "legally inadequate" theory violates the Due Process Clause.

---

[5] Section 2254(d) governs federal habeas review of only those claims that were adjudicated on the merits in state court, but we conclude, as the district court did, that the First District Court of Appeal adjudicated this claim on the merits when it considered Clark's Rule 3.850 appeal.

[6] To the extent that Clark contends that his attempted murder conviction necessarily was based on only a felony murder theory, we reject this contention.

11

In the first case, *Stromberg v. California*, 283 U.S. 359, 51 S. Ct. 532 (1931), the Supreme Court reviewed a conviction under a California statute that prohibited the display of a red flag for the purposes of opposing government, inviting anarchistic action, or aiding seditious propaganda. The defendant had been convicted for violating the statute, but the jury returned a general verdict that did not indicate which of the three purposes the defendant had been found guilty of pursuing. The Court held that the first purpose prohibited under the statute – opposing government – was protected by the First Amendment, which prompted the Court to conclude: "The first clause of the statute being invalid upon its face, the conviction of the appellant, which so far as the record discloses may have rested upon that clause exclusively, must be set aside." *Id.* at 370, 51 S. Ct. at 536.

In *Yates v. United States*, 354 U.S. 298, 77 S. Ct. 1064 (1957), the Supreme Court had occasion to review a general verdict once again, but this time in a slightly different context. In *Yates*, the defendants had been charged in a single count with conspiring to advocate the overthrow of the government (the "advocacy" charge) and with conspiring to organize, as the Communist Party, a society that advocates the overthrow of the government (the "organizing" charge). The defendants were convicted, but the jury's general verdict did not indicate whether the jury found them guilty on the "advocacy" charge or the "organizing" charge. The Supreme Court

12

concluded that the "organizing" charge was barred by the statute of limitations, and, citing *Stromberg*, applied the rule "which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Id.* at 312, 77 S. Ct. at 1073.

Finally, in *Griffin v. United States*, 502 U.S. 46, 112 S. Ct. 466 (1991), the Supreme Court reviewed yet another general jury verdict and discussed, at some length, the line of cases that includes both *Stromberg* and *Yates*. In *Griffin*, the defendant had been charged in a multiple-object conspiracy. The defendant was convicted, but the evidence at trial was insufficient to support a conviction based on one of the objects of the conspiracy charged in the indictment, and the jury's general verdict did not indicate which of the charged objects provided the basis for conviction. Departing from the rule announced in *Stromberg* and *Yates*, the Court concluded that a defendant's conviction need not be set aside when the jury returns a general verdict and the evidence is insufficient to support a conviction on one, but not every, ground charged.

In reaching this conclusion, the *Griffin* Court examined its prior decisions in *Stromberg* and *Yates*. The Court observed that the decision in *Stromberg* was *constitutionally* compelled, but noted that the holding in *Stromberg* "do[es] not necessarily stand for anything more than the principle that, where a provision of the

13

Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground." *Griffin*, 502 U.S. at 53, 112 S. Ct. at 471. In reaching this conclusion, the *Griffin* Court suggested that the conviction in *Stromberg* did not necessarily violate the Due Process Clause. Instead, the Court concluded that the conviction in *Stromberg*, which might have been based on a provision of a state statute that criminalized conduct protected by the First Amendment, violated the First Amendment itself.

By contrast, the *Griffin* Court concluded that it was unlikely that the result in *Yates* was constitutionally compelled. The propriety of the conviction in *Yates* was in doubt because of a statutory time-bar; unlike the conviction in *Stromberg*, there was no danger that the *Yates* conviction was based on an unconstitutional statute. Thus, while the conviction in *Stromberg* violated the First Amendment, the decision in *Yates* was constitutionally mandated, the *Griffin* Court reasoned, only if a general verdict that might rest on a legally inadequate basis violates the Due Process Clause. But the *Griffin* Court observed that *Yates* "made no mention of the Due Process Clause." 502 U.S. at 52, 112 S. Ct. at 470. In fact, the Court noted that the basis for the decision in *Yates* was not clear:

> *Yates*, however, was the first and only case of ours to apply *Stromberg* to a general verdict in which one of the possible bases of conviction did not violate any provision of the Constitution but was simply legally

14

> inadequate (because of a statutory time bar). As we have described, that was an unexplained extension, explicitly invoking neither the Due Process Clause (which is an unlikely basis) nor our supervisory powers over the procedures employed in federal prosecution.

*Griffin*, 502 U.S. at 55-56, 112 S. Ct. at 472. The decision in *Yates* could have been predicated on either the Due Process Clause or the Supreme Court's supervisory powers, but the *Griffin* Court suggested that it was "unlikely" that the *Yates* decision was compelled by the Due Process Clause.

In light of our examination of the *Stromberg-Yates-Griffin* line of cases, we reject Clark's argument. Clark does not assert that a conviction for attempted felony murder, as such, would violate the Constitution. As a consequence, the rule in *Stromberg* does not apply. Rather, Clark contends that after the Florida Supreme Court deemed attempted felony murder a "legally inadequate" theory, *Yates* required that the general verdict in this case be set aside. We disagree. Even if attempted felony murder is a "legally inadequate" basis for conviction under Florida law (within the meaning of that phrase in *Griffin*), the Supreme Court has not clearly established that the decision in *Yates* was constitutionally mandated. On the contrary, *Yates* did not mention or invoke the Due Process Clause, and the *Griffin* Court observed that the Due Process Clause was "an unlikely basis" for the *Yates* decision. *Griffin*, 502 U.S. at 56, 112 S. Ct. at 472. Although the Court's discussion in *Griffin* does not

15

foreclose the possibility that the decision in *Yates* was compelled by the Due Process Clause, it falls far short of the clarity required to render the state court's adjudication of Clark's claim contrary to clearly established federal law for the purposes of § 2254(d)(1).

B. *Ineffective Assistance of Appellate Counsel Claim*

More troubling is the district court's disposition of Clark's ineffective assistance of appellate counsel claim. An ineffective assistance of appellate counsel claim is governed by the familiar two-part performance-and-prejudice standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *see also Grubbs v. Singletary*, 120 F.3d 1174, 1176 (11th Cir. 1997) (applying the *Strickland* test to a claim of ineffective assistance of *appellate* counsel). To understand our concerns regarding the disposition of this claim, it is necessary to briefly summarize the course of proceedings, in both state and federal court, with respect to this claim.

First, in the state habeas proceeding, the State conceded that an evidentiary hearing was required before the court could evaluate Clark's appellate counsel's performance under the deficient performance prong of the *Strickland* test. No evidentiary hearing was conducted, and the state habeas court did not issue a written opinion explaining the basis for its denial of Clark's claim. Clark then filed a Rule

3.850 motion, but he did not include an ineffective assistance of appellate counsel claim in his motion. Although Clark's appellate attorney appeared at the Rule 3.850 evidentiary hearing, his testimony focused primarily on his failure to raise a sentencing issue on direct appeal – he was asked only one question about his failure to raise the *Gray* decision, and the question only touched upon the propriety of raising an unpreserved issue and the use of a motion for rehearing to do so. And finally, the Rule 3.850 court, in its order, concluded that any claims relating to ineffective assistance of appellate counsel were not properly before it.[7]

Then, in the federal habeas proceeding, the State again contended that the court should deny Clark's petition based on his failure to satisfy the prejudice prong of the *Strickland* test. With regard to the deficient performance inquiry, the State asserted

_____

[7]    The dissent relies on the holdings of the Rule 3.850 court and the state habeas court to conclude that Clark has failed to establish prejudice under *Strickland*. But the Rule 3.850 court had no authority to consider Clark's ineffective assistance of appellate counsel claim, which was not included in his Rule 3.850 motion, because such a claim is cognizable only in a habeas corpus proceeding. *See supra note* 3. As a consequence, the Rule 3.850 court's conclusion that there was no reasonable probability that the outcome of Clark's trial would have been different if the jury had been permitted to rely only on a premeditation theory has no bearing upon our analysis. And, more importantly, the Rule 3.850 court's focus on the outcome of a new trial, as opposed to the outcome of Clark's appeal, was improper. *See infra note* 9.

The state habeas court, by contrast, rejected Clark's ineffective assistance of appellate counsel claim without a written opinion. This summary disposition certainly appears to be an adjudication on the merits, *see infra note* 10, and there is reason to believe that the state habeas court rejected Clark's claim based on *Strickland*'s prejudice prong. (The State conceded that an evidentiary hearing was necessary to evaluate *Strickland*'s performance prong, but Clark's claim was rejected without an evidentiary hearing.) Nonetheless, we believe that in the absence of findings of fact or conclusions of law, it goes too far to state that the state habeas court concluded that Clark was not prejudiced by his appellate counsel's failure to raise the *Gray* decision.

17

that Clark's counsel was not required to anticipate the *Gray* decision, which Clark concedes, but the State acknowledged that Clark's counsel did not file a notice of supplemental authority or move for rehearing based on *Gray*. In similar fashion to its approach in the state habeas proceeding, the State invited the district court to resolve the issue based on *Strickland*'s prejudice requirement.

But the district court declined to do so, and instead denied Clark's ineffective assistance of appellate counsel claim on the ground that the performance of Clark's appellate counsel was not constitutionally deficient. To reach this conclusion, the court relied on Clark's appellate counsel's testimony at the Rule 3.850 evidentiary hearing, the Florida Rules of Appellate Procedure, and the court's understanding that, at the time of Clark's appeal, it was not clear how (or if) *Gray* would apply to a defendant who was also prosecuted under an alternative theory of premeditation. The court did not address *Strickland*'s prejudice inquiry.

The district court's reliance on the testimony from the Rule 3.850 evidentiary hearing was improper. When Clark's appellate counsel testified at the Rule 3.850 evidentiary hearing, Clark had not asserted an ineffective assistance of appellate counsel claim in his Rule 3.850 motion. Clark's counsel was asked only one question about *Gray* during the hearing, and that question did not probe counsel's ability to file a notice of supplemental authority or a motion for leave to file a supplemental

18

brief. *See supra* note 4. Moreover, in the Rule 3.850 hearing, Clark had no incentive to challenge his appellate counsel's ability to raise the *Gray* decision. Finally, the Rule 3.850 court concluded that any issues relating to an ineffective assistance of appellate counsel claim were not properly before it. Because there has been no evidentiary hearing on this claim and because the district court's reliance on the Rule 3.850 testimony was misplaced, we vacate the court's denial of relief on this claim and remand for further proceedings.[8] Without an evidentiary hearing, the record in

---

[8] The district court appeared to place central importance on Clark's appellate counsel's testimony at the Rule 3.850 hearing – testimony which, as we have noted, should not have been considered. But the court also relied on the Florida Rules of Appellate Procedure and the uncertain effect of the *Gray* decision at the time of Clark's direct appeal to support its denial of relief on Clark's ineffective assistance of appellate counsel claim.

We conclude that these other considerations – the Florida appellate rules and the uncertain effect of *Gray* – are insufficient to support the court's conclusion that, as a matter of law, the performance of Clark's appellate counsel was not constitutionally deficient. The district court relied on the Florida appellate rules to *corroborate* Clark's appellate counsel's testimony at the Rule 3.850 hearing, but the court's reliance on that testimony in the first place was improper. Furthermore, the State has presented enough evidence that supplemental briefing is regularly permitted in Florida courts to render the appellate rules insufficient, in the absence of an evidentiary hearing and factual findings, to establish that Clark's appellate counsel's performance was not constitutionally deficient as a matter of law.

The district court also concluded that the performance of Clark's appellate counsel was not constitutionally deficient because it was unclear, at the time of Clark's direct appeal in 1995, whether *Gray* would affect an attempted first-degree murder conviction that might have been based on a felony murder theory but also might have been based on a premeditation theory. The district court's conclusion in this regard is questionable. *Compare Valentine v. State*, 688 So. 2d 313, 317 (Fla. 1996) (concluding, a year and a half after Clark's direct appeal, that an attempted murder conviction that might have been based on felony murder and might have been based on premeditation must be set aside), *with Jackson v. State*, 648 So. 2d 85, 90 (Fla. 1994) (a 1994 Florida Supreme Court decision, pre-dating Clark's direct appeal, that cites *Griffin v. United States*, 502 U.S. 46, 59, 112 S. Ct. 466, 474 (1991), for the proposition that "[w]hen . . . jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error").

The Florida appellate rules and the uncertain effect of *Gray* do not support the conclusion

19

this case does not support a finding regarding that constitutional adequacy of Clark's appellate counsel's performance.

The State asks us to evaluate Clark's showing of prejudice under *Strickland* and invites us to affirm the district court's order on this alternate ground. However, the prejudice inquiry under *Strickland* is a mixed question of law and fact, *Fuller v. Att'y Gen. of State of Ala.*, 197 F.3d 1109, 1111 (11th Cir. 1999), and the district court did not discuss *Strickland*'s prejudice prong at all. We prefer, in this case, to have the district court address the issue in the first instance.[9]

---

that, as a matter of law, Clark's appellate counsel's performance was not constitutionally deficient. On this record, resolution of the deficient performance prong of the *Strickland* test requires an evidentiary hearing.

[9] The dissent does not share our misgivings, and would decide Clark's ineffective assistance of appellate counsel claim based on *Strickland*'s prejudice prong. In concluding that Clark was not prejudiced by his appellate counsel's failure to bring *Gray* to the court's attention on direct appeal, the dissent appears to place significant emphasis on the fact that there is overwhelming evidence to support the State's premeditation theory.

Although Clark certainly might not fare well at a new trial in light of the substantial evidence of premeditation, his prospects for success at a new trial are not relevant to our examination of prejudice in this case. In the context of an ineffective assistance of appellate counsel claim, "prejudice" refers to the reasonable probability that the outcome *of the appeal* would have been different. *Eagle v. Linahan*, 279 F.3d 926, 943 (11th Cir. 2001); *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990). Thus, the only question under the prejudice prong of the *Strickland* test is whether there was a reasonable probability that the appellate court, having been informed of the *Gray* decision, would have granted Clark a new trial. *Eagle*, 279 F.3d at 943. As we note in footnote 8 above, the Florida Supreme Court's decisions in *Valentine v. State*, 688 So. 2d 313 (Fla. 1996), and *Jackson v. State*, 648 So. 2d 85 (Fla. 1994), suggest that Clark might have been awarded a new trial if his appellate counsel had raised the *Gray* decision on direct appeal in May 1995, and we find it prudent to remand this case and permit the district court to address this issue, at its discretion, in the first instance. In any event, to the extent that the dissent relies on the overwhelming evidence of premeditation to support its finding of no prejudice under *Strickland*, we find its reliance to be misplaced.

20

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order insofar as the court rejected Clark's claim under the Due Process Clause, but we VACATE the district court's order insofar as the court denied relief on Clark's ineffective assistance of appellate counsel claim. We REMAND this action for further proceedings consistent with this opinion.[10]

AFFIRMED IN PART; VACATED IN PART AND REMANDED.

---

[10] It appears from the briefs that the parties disagree about whether § 2254(d)'s standard for evaluating a state court adjudication applies to Clark's ineffective assistance of appellate counsel claim. The district court concluded that the § 2254(d) standard did not apply because the First District Court of Appeal summarily denied Clark's claim without supporting analysis. Clark does not dispute that conclusion, but the State argues in its brief that Clark has failed to make the showing required by § 2254(d). *See Isaacs v. Head*, 300 F.3d 1232, 1258-60 (11th Cir. 2002). Because the parties do not brief this issue in any detail, and because Clark's ineffective assistance of appellate counsel claim must be addressed again on remand, we decline to address the issue.

RONEY, Circuit Judge, dissenting:

I respectfully dissent. I would affirm the district court's denial of Harold B. Clark's petition for writ of habeas corpus.

If Clark was indeed convicted of the nonexistent offense of attempted felony murder, there would undoubtedly be a clearly established violation of federal due process for a federal court to grant Clark, a state prisoner, habeas corpus relief under 28 U.S.C. § 2254(d). *See Adams v. Murphy*, 653 F.2d 224, 225 (5th Cir. 1981) (affirming district court's grant of petition for writ of habeas corpus on federal due process grounds after Supreme Court of Florida certified that petitioner's jury conviction of attempted perjury was not a crime under Florida law). To convict a defendant solely based on a nonexistent offense is clearly an impermissible violation of federal due process. *See Adams*, 653 F.2d at 225 ("Nowhere in this country can any man be condemned for a nonexistent crime.").

But that is not what happened here. It seems clear to me, as it did to the Florida courts, that the jury did not convict Clark of the nonexistent offense of attempted felony murder, a crime struck down by the Supreme Court of Florida. *See State v. Gray*, 654 So. 2d 552, 552-53 (Fla. 1995). Although the trial court instructed the jury on both premeditated and felony murder theories,

22

the evidence presented at trial – as the district court properly stated in its order denying habeas corpus relief – overwhelmingly supports a conviction for attempted premeditated murder.

Clark made the argument that *Gray* requires reversal of his conviction to two Florida courts subsequent to final disposition of his direct state appeal. He first made this argument to the Florida First District Court of Appeal in a petition for writ of habeas corpus on September 21, 1995, and it was summarily rejected, thus determining, *sub silentio*, that *Gray* does not require reversal of Clark's conviction under the facts and circumstances of his case.

Clark then raised this argument in a Florida Rule of Criminal Procedure 3.850 motion for post-conviction relief in Florida circuit court on May 8, 1996. There, although the Florida circuit court recognized that the *Gray* case should have been raised for appellate preservation purposes during the pendency of Clark's *direct* appeal and that a 3.850 motion was an inappropriate avenue to raise an argument not previously raised on direct appeal, the court nonetheless reasoned that "there is absolutely no reasonable probability that the jury would not have convicted the defendant of attempted first degree murder if this Court had not also instructed the jury on felony murder theory. . . . In short, the evidence that the defendant committed attempted premeditated first degree

23

murder was literally overwhelming." The court concluded, "Therefore, there is no reasonable probability that the outcome of the defendant's trial would have been any different if this Court had not also instructed the jury on attempted felony murder, and he would not be entitled to any relief even if his claim were properly before this Court."

Because two Florida state courts have determined that *Gray* would not require reversal under the facts and circumstances of Clark's case, appellate counsel's failure to raise that claim on Clark's direct appeal could not have prejudiced Clark. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Therefore, I would deny Clark's claim that his appellate counsel was ineffective in failing to raise *Gray* on direct appeal.