# Supreme Court of Florida

_____

No. SC20-1805
_____

**TERANCE VALENTINE,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

April 7, 2022

PER CURIAM.

Terance Valentine, a prisoner under sentence of death, appeals the circuit court's order summarily denying his second successive motion for postconviction relief, filed under rule 3.851 of the Florida Rules of Criminal Procedure.[1]  For the reasons that follow, we affirm.

## I.    Background

Valentine brutally tortured and murdered Ferdinand Porche in 1988.  The evidence from Valentine's third trial establishes the

1.  We have jurisdiction.  *See* art. V, § 3(b)(1), Fla. Const.

following sequence of events on the day Porche was murdered. Porche arrived home from work in the early afternoon. Upon his entry into the home, Valentine shot him in the back, paralyzing him from the waist down. Valentine announced, "[T]his is my revenge." *Valentine v. State*, 688 So. 2d 313, 315 (Fla. 1996).

Valentine then forced Porche to crawl into a bedroom "where he found his wife nude, bound, and gagged and his baby crying and covered in blood." *Id.* In that bedroom, Valentine bludgeoned Porche in the head at least three times with a gun, which broke Porche's jaw and caused him to lose several teeth. After that beating, Valentine told Porche, "I'm gonna kill you, but you're gonna suffer. This is not going to be easy." *Id.* He then stabbed Porche in the buttocks and bound him with baling wire.

Following the brutal attack in the home, Valentine took Porche and his wife[2] to a remote location nine miles away. There, Valentine again confronted Porche who was bound, helpless, and in severe agony. Valentine pointed a gun at one of Porche's eyes from

_____

2. We are aware that Livia Romero was not legally married to Porche. But we use the designation "wife" as it is in keeping with our past opinions in Valentine's case.

- 2 -

point-blank range and then pulled the trigger. That shot finally killed Porche. Remarkably, Porche's wife—whom Valentine also shot in the head—survived and would later become a key State witness.

The State charged Valentine with the first-degree murder of Porche and other crimes. Valentine's first trial resulted in a mistrial. Following his second trial, a jury found him guilty of first-degree murder and recommended a sentence of death. However, due to a jury-selection error, we reversed Valentine's convictions and vacated his sentences. *Valentine v. State*, 616 So. 2d 971, 974-75 (Fla. 1993).

On remand, a jury again found Valentine guilty of several crimes, including first-degree murder. Valentine waived a penalty-phase jury, and the trial court ultimately sentenced him to death. We affirmed the first-degree murder conviction and death sentence. *Valentine*, 688 So. 2d at 318.

Since that time, Valentine has sought relief in both state and federal court, but has had no success in either forum. *See Valentine v. State*, 98 So. 3d 44, 58 (Fla. 2012) (affirming denial of initial postconviction motion and denying habeas petition);

V*alentine v. State*, 296 So. 3d 375, 376 (Fla. 2020) (affirming summary denial of first successive postconviction motion).

Valentine has now filed his second successive motion for postconviction relief asserting three claims that all involve an eyewitness named Terry Spain who recently completed an affidavit. Valentine's primary claim seeks relief on the ground that Spain's affidavit constitutes newly discovered evidence which entitles him to a new trial. In his affidavit, Spain states that he saw a white male standing roughly 40 to 50 yards away from him. After hearing two gunshots, Spain fled from the scene and called for police assistance—ultimately speaking with police on multiple occasions. Later, during Valentine's first trial, law enforcement provided Spain a hotel room, meals, and $300 in cash. According to the affidavit, Spain did not testify at that trial or the subsequent trials, nor did trial counsel or any defense investigator ever contact him.

In addition to the newly discovered evidence claim, Valentine alleged that the State violated *Brady* and *Giglio* in its handling of Spain during the first trial. *See Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

The circuit court summarily denied Valentine's motion in its entirety. As an initial matter, the court ruled that all the claims were procedurally barred for not being timely raised. In addition, applying the standard set forth in *Jones v. State*, 709 So. 2d 512 (Fla. 1998), the court ruled that the allegations in the affidavit did not constitute newly discovered evidence, and, even if they did, that evidence was not of such a nature as would likely produce an acquittal on retrial—stressing the overwhelming evidence of guilt. As for the other claims, the court found that the record refuted the *Brady* claim and that the *Giglio* claim was legally insufficient.

This appeal follows.

## II.   Analysis

Valentine argues that the circuit court erred in denying his postconviction motion without first holding an evidentiary hearing. We disagree.

"A circuit court should hold an evidentiary hearing on a rule 3.851 motion 'whenever the movant makes a facially sufficient claim that requires a factual determination.' " *Rogers v. State*, 327 So. 3d 784, 787 (Fla. 2021) (quoting *Pardo v. State*, 108 So. 3d 558,

560 (Fla. 2012)).[3]  In contrast, a circuit court may summarily deny

a claim that is legally insufficient or refuted by the record.  *Id.* at

787-88; *McDonald v. State*, 296 So. 3d 382, 383 n.2 (Fla. 2020).

With these principles in mind, we turn to Valentine's claims.

As noted above, Valentine's first claim sought a new guilt

phase based on newly discovered evidence.  To be facially sufficient,

a claim of newly discovered evidence must meet the two-part *Jones*

test.  We have described that test as follows:

> First, the evidence must not have been known by the trial
> court, the party, or counsel at the time of trial, and it
> must appear that the defendant or defense counsel could
> not have known of it by the use of diligence.  Second, the
> newly discovered evidence must be of such [a] nature
> that it would probably produce an acquittal on retrial.

*Long v. State*, 183 So. 3d 342, 345 (Fla. 2016) (quoting *Tompkins v.*

*State*, 994 So. 2d 1072, 1086 (Fla. 2008)).

We agree with the circuit court that the record conclusively

refutes Valentine's newly discovered evidence claim.  That claim is

based on Spain's affidavit.  However, as the circuit court noted,

police reports and the transcript from the second trial contain

---

3. "The standard of review here is de novo."  *Rogers*, 327 So.
3d at 787 n.5.

much of the information in Spain's affidavit.  Information available from those sources clearly does not meet the first prong of *Jones*.  The only "new" information in the affidavit was that law enforcement provided Spain a hotel room, meals, and $300 in cash during Valentine's first trial.  However, the record demonstrates that trial counsel was aware of Spain's involvement in the case and could have ascertained these additional facts if due diligence had been exercised.  *See Rogers*, 327 So. 3d at 788.  Thus, Valentine failed to meet prong one of the *Jones* test as to all the allegations in Spain's affidavit.[4]  Accordingly, the circuit court properly denied Valentine's newly discovered evidence claim.

Valentine's *Brady* claim fares no better.  To prevail on a *Brady* claim, Valentine must demonstrate that (1) favorable evidence which is exculpatory or impeaching, (2) was suppressed by the State, and (3) because the evidence was material, he was prejudiced.  *See Sweet v. State*, 293 So. 3d 448, 451 (Fla. 2020).

---

4. Based on our review of the record, we conclude that evidence of the State's handling of Spain during Valentine's first trial would not likely produce an acquittal on retrial—especially given the overwhelming evidence of guilt.  Accordingly, the record also refutes the second prong of Valentine's *Jones* claim.

As noted above, Valentine's *Brady* claim is also premised on information in Spain's affidavit—primarily the State's handling of Spain during Valentine's first trial. However, Valentine does not allege that the State prevented him from calling Spain at the third trial—i.e., the trial resulting in the first-degree murder conviction he is now challenging. Thus, at a minimum, Valentine failed to demonstrate suppression of evidence in relation to the relevant trial. Accordingly, the circuit court properly denied the *Brady* claim.[5]

_____

5. As noted above, Valentine asserted a *Giglio* claim in his motion, but he failed to identify any false testimony by a state witness. *See Jimenez v. State*, 265 So. 3d 462, 479 (Fla. 2018). The circuit court found the claim legally insufficient. On appeal, Valentine has made no argument specifically challenging that ruling. Thus, he has abandoned any argument as to the denial of the claim. *See Doorbal v. State*, 983 So. 2d 464, 482-83 (Fla. 2008) (conclusory argument insufficient to support reversal); *Ward v. State*, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009) (en banc) (finding issues abandoned where appellant did not "address[] them in his brief").

### III. Conclusion

For the foregoing reasons, we affirm the circuit court's summary denial of Valentine's second successive motion for postconviction relief.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Hillsborough County, Michelle Sisco, Judge – Case No. 291988CF012996000AHC

Marie-Louise Samuels Parmer and Maria DeLiberato of Parmer DeLiberato, P.A., Tampa, Florida,

    for Appellant

Ashley Moody, Attorney General, Tallahassee, Florida, and Rick A. Buchwalter, Assistant Attorney General, Tampa, Florida,

    for Appellee