625 So.2d 827 (1993)
Dennis FLANAGAN, Petitioner,
v.
STATE of Florida, Respondent.
No. 78923.
Supreme Court of Florida.
September 9, 1993.
Rehearing Denied October 25, 1993.
Nancy A. Daniels, Public Defender and Kathleen Stover, Asst. Public Defender, Tallahassee, for petitioner.
Robert A. Butterworth, Atty. Gen. and Gypsy Bailey, Asst. Atty. Gen., Tallahassee, for respondent.
GRIMES, Justice.
Dennis Flanagan was convicted of sexually battering his mentally retarded nine year-old daughter, T.F. The First District Court of Appeal, sitting en banc, affirmed the conviction and certified the following questions as being of great public importance:

*828 (1) IS EXPERT SCIENTIFIC TESTIMONY WHICH DOES NOT MEET THE TEST OF FRYE V. UNITED STATES, 293 F. 1013 (D.C. CIR. 1923) FOR ADMISSIBILITY OF NOVEL SCIENTIFIC EVIDENCE OTHERWISE ADMISSIBLE AS BACKGROUND INFORMATION IN A CRIMINAL TRIAL?
(2) IS PEDOPHILE/CHILD SEX OFFENDER PROFILE EVIDENCE ADMISSIBLE IN A CRIMINAL TRIAL?
Flanagan v. State, 586 So.2d 1085, 1124-25 (Fla. 1st DCA 1991). We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution.
One of the witnesses who testified against Flanagan at trial was Dr. Goslin, a psychologist for the HRS Child Protection Team, who evaluated T.F. twice. After discussing her initial evaluation of T.F., Dr. Goslin described typical problems in interviewing a young child, noting for example that it is common for children who were sexually abused to have trouble pinpointing the time of the abuse and keeping the incidents separate. Goslin then talked about common characteristics of the home environment where child sexual abuse occurs and about the characteristics of abusers. It was this latter testimony which was objected to by Flanagan and which troubled a majority of the judges on the district court of appeal.[1]
We begin our analysis of the admissibility of this testimony with the basic principle that novel scientific evidence is not admissible in Florida unless it meets the test established in Frye v. United States, 293 F. 1013 (D.C. Cir.1923). See Stokes v. State, 548 So.2d 188, 195 (Fla. 1989). Under Frye, in order to introduce expert testimony deduced from a scientific principle or discovery, the principle or discovery "must be sufficiently established to have gained general acceptance in the particular field in which it belongs." 293 F. at 1014.
Of course, not all expert testimony must meet this test in order to be admissible. As discussed by Judge Ervin below, 586 So.2d at 1109-11, pure opinion testimony, such as an expert's opinion that a defendant is incompetent, does not have to meet Frye, because this type of testimony is based on the expert's personal experience and training. While cloaked with the credibility of the expert, this testimony is analyzed by the jury as it analyzes any other personal opinion or factual testimony by a witness. Profile testimony, on the other hand, by its nature necessarily relies on some scientific principle or test, which implies an infallibility not found in pure opinion testimony. The jury will naturally assume that the scientific principles underlying the expert's conclusion are valid. Accordingly, this type of testimony must meet the Frye test, designed to ensure that the jury will not be misled by experimental scientific methods which may ultimately prove to be unsound. See Stokes, 548 So.2d at 193-94 ("[A] courtroom is not a laboratory, and as such it is not the place to conduct scientific experiments. If the scientific community considers a procedure or process unreliable for its own purposes, then the procedure must be considered less reliable for courtroom use.").
Here, it is virtually uncontested that sex offender profile evidence cannot meet this test. The State does not attempt to prove this evidence meets Frye by citing cases or authority showing this type of profile to be accepted in the scientific community, and the only evidence on this point at trial was Dr. Goslin's testimony that this type of information is generally relied on by people working in the field of child sexual abuse to determine what households are at risk and to aid in treatment. However, even Goslin went on to say that the profile could not be used to prove or disprove that a person was a child abuser. After examining relevant academic literature and case law, we find that sexual offender profile evidence is not generally accepted in the scientific community and does not meet the Frye test for admissibility. For an excellent and thorough discussion of this issue, see Judge Ervin's opinion below. *829 Flanagan, 586 So.2d at 1112-20 (Ervin, J., concurring in part and dissenting in part).
Inexplicably, the majority opinion below held that this evidence was admissible without meeting Frye because it was introduced as "background information." Flanagan, 586 So.2d at 1100. We are somewhat confused by this holding. If the evidence was not admitted as substantive evidence of guilt, then it was irrelevant. This is not to say, of course, that an expert witness is not allowed to explain his credentials and the background of any relevant tests or opinions. However, in this case the entire subject matter of this portion of the expert's testimony related to what the district court of appeal termed background information. The courtroom is not a classroom to be used to educate a jury on an entire field only tangentially related to the issues at trial.
We also note that this testimony was completely inappropriate as substantive evidence of guilt. If anything, this profile evidence tended to show that because Flanagan and his house had certain traits which fit Dr. Goslin's child sex offender profile, he necessarily sexually abused his daughter. Establishing that a defendant has a certain character trait in order to show he acted in conformity with that trait on a certain occasion is forbidden by the rules of evidence. § 90.404(1), Fla. Stat. (1987); see generally Charles W. Ehrhardt, Florida Evidence § 404.4 (1992).
Accordingly, we find the admission of Dr. Goslin's profile testimony to be error. To the extent the testimony was admitted as pure background information, it was irrelevant. To the extent it was admitted as substantive evidence of guilt, it was inadmissible for failing to meet the Frye test[2] and because it constituted an impermissible attack on Flanagan's character.
As a consequence, we must determine the effect of the improper admission of Dr. Goslin's profile testimony. Initially, we note that there was overwhelming evidence of Flanagan's guilt introduced at trial, including the in-court testimony of T.F.; a videotape of T.F.'s "one-strike" interview with an intake counselor for HRS; the testimony of Dr. Penrod, who described the physical condition of T.F. as consistent with repeated incidents of vaginal penetration; the testimony of Brenda Harrison, who witnessed numerous incidents of sexual abuse and occasionally participated in the abuse; the testimony of Brenda Lutz, who described Flanagan's attempts to conceal his identity and elude police once he learned of the accusations; the testimony of V.L., a neighbor child whose description of sexual abuse at the hands of Flanagan and Brenda Harrison in their home was admitted as similar fact evidence; and the testimony of Dr. Goslin, who explained that inconsistencies in T.F.'s statements and her apparent lack of trauma were typical of abused children.
The vast majority of the testimony by Dr. Goslin consisted of descriptions of her interviews with T.F., her experience with children, the various problems one encounters in interviewing children, and common reactions to abuse. This testimony was not objected to and was properly admitted. While a small portion of Dr. Goslin's testimony involved a description of the profile of a typical sex offender and the characteristics of his home,[3] Goslin freely admitted that the profile was far from dispositive in identifying abusers, as not everyone who fit the broad descriptions offered as a profile could be labeled sex offenders.
*830 Further, Dr. Goslin never tied the profile testimony to characteristics of Flanagan or his home. The only testimony which could be even arguably tied to Dr. Goslin's profile was Brenda Harrison's revelation that there were no doors inside their home and her statements that Flanagan was a controlling, dominant person. As to the latter, these statements were made in the context of explaining why Brenda was afraid to turn him in, not in the context of Flanagan fitting a profile. Finally, the prosecutor made absolutely no mention of this evidence in his closing argument; he emphasized Dr. Goslin's testimony only insofar as it shed light on T.F.'s reactions to the abuse and revealed things T.F. had actually said to Goslin during her interviews. In light of the brevity of the improper testimony and the lack of emphasis placed on the testimony by the State, as well as the overwhelming evidence of Flanagan's guilt, we find the admission of this testimony to be harmless error beyond a reasonable doubt.
We answer the certified questions in the negative. However, we approve the district court's decision affirming Flanagan's conviction, but approve that court's opinion only to the extent it is consistent with this opinion.[4]
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, KOGAN and HARDING, JJ., concur.
NOTES
[1] Even the State conceded at oral argument that this evidence was inadmissible in its case-in-chief at trial.
[2] We are mindful that the United States Supreme Court recently construed Rule 702 of the Federal Rules of Evidence as superseding the Frye test. Daubert v. Merrell Dow Pharmaceuticals, Inc., ___ U.S. ___, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). However, Florida continues to adhere to the Frye test for the admissibility of scientific opinions. Stokes v. State, 548 So.2d 188 (Fla. 1989).
[3] Goslin testified that male sexual abusers generally fall into one of three categories: 1) a pedophile, sexually attracted only to children; 2) a passive, dependent person; or 3) a demanding, controlling, authoritarian person. She also testified that generally the home environment in these situations involves a lack of privacy, for example no interior doors or locks, a lack of clear physical or personal boundaries or boundaries between parent and child, an immature parent, and a lack of knowledge or understanding of normal sexual behavior of children.
[4] We do not address Flanagan's other points on appeal which were not encompassed by the certified question. We note that pursuant to this Court's recent opinion in State v. Jones, 625 So.2d 821 (Fla. 1993), T.F.'s statement to the Child Protection Team was not admissible under the medical diagnosis or treatment exception to the hearsay rule. However, the court below pointed out that the testimony was properly admitted under section 90.801(2)(b), Florida Statutes (1987).