884 So.2d 131 (2004)
Arturo CANO, Appellant,
v.
STATE of Florida, Appellee.
No. 2D02-3830.
District Court of Appeal of Florida, Second District.
July 9, 2004.
*132 James Marion Moorman, Public Defender, and James C. Banks and Alexander Dombrowsky, Special Assistant Public Defenders, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Katherine Coombs Cline, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Chief Judge.
Arturo Cano appeals his judgments and sentences for ten separate sexual offenses, including two counts of capital sexual battery. We affirm and write to discuss two issues. We conclude that the trial judge was not required to disqualify himself from ruling on the motion to suppress merely because he was the magistrate who issued the earlier search warrant. We further conclude that the magistrate in issuing this search warrant, although required to consider the relevance and the sufficiency of the evidence within the affidavits, was not required to conduct a Frye[1] hearing before determining the issue of probable cause.
In 1989, Mr. Cano lived next door to the victim, who was then a four-year-old girl. While she was visiting his house, he fondled her. About three years later, Mr. Cano moved in with the victim and her mother. Thereafter, he sexually abused the victim frequently. Between 1993 and 2001, he engaged in repeated and progressively more advanced sexual conduct with the victim. During the period when the victim was less than twelve years of age, much of the abuse constituted capital sexual battery. When the victim was old enough to attend eighth grade, Mr. Cano arranged to home school this child to reduce the likelihood that his crimes would be discovered. In December 2000, the victim observed a nude photograph of herself, which Mr. Cano was using as a screensaver on his computer. She also viewed additional nude photographs of herself and photographs of other young children engaged in sexual activity with adults, which were available on his computer.
In the spring of 2001 when Mr. Cano moved out of the victim's house, she told her mother about the molestations. The mother confronted Mr. Cano, who did not deny the allegations but responded violently. The mother does not speak English, and she delayed reporting these events to law enforcement. Nevertheless, by July 2001, the Manatee County Sheriff's Office began an investigation.
The victim, who was sixteen years old when she reported the abuse, gave a deputy a detailed statement. She also called Mr. Cano on the telephone, allowing the deputy to monitor the call. During the call, she falsely claimed that Mr. Cano had given her herpes. He denied that he had done so, but only because he claimed that he saw a doctor frequently and did not have the disease. Mr. Cano also asked her *133 if she remembered how he always told her that one day he believed he was going to prison and would never get to see her again. The victim told Mr. Cano that her mother was going to have him charged with sexually molesting her, and he did not deny molesting her. The victim asked if he still had the naked pictures of her, and he told her that he had gotten rid of all of her things, but did not expressly state that he had destroyed his photographs of her.
Following this investigation, law enforcement sought to obtain a search warrant for Mr. Cano's residence. They wished to search for computers and computer-related physical evidence that might contain the photographs described by the victim. They also sought camera equipment and videotapes, slides, or film that might depict the victim or nudity of other children. Finally, they sought pornographic publications and physical evidence of computer passwords or encryption codes.
In support of the request, law enforcement filed a lengthy affidavit and application for a search warrant on July 20, 2001. Two officers submitted affidavits in support of the warrant. The first officer had been involved in the interview of the victim and her mother. His affidavit detailed the information provided to law enforcement by the victim and the mother. This portion of the application was a typical affidavit in support of a search warrant.
The second officer's affidavit was somewhat unusual. He had been a deputy for twenty years. He had extensive experience and training in computer/internet child exploitation and sexual offenses involving children. His affidavit provided information about the psychological profile of the typical person who commits repeated sex crimes involving one targeted child[2] and those who involve themselves with child pornography on computers and the internet. Although not expressly stated, this portion of the application for the search warrant was included to establish (1) the types of computers, camera equipment, and recorded images that would be associated with these crimes, and (2) the tendency of such persons to store and retain such images for an extended time. The extended period of retention was important to establish that the victim's information about data in the computer in December 2000 was not stale in July 2001.
This application was submitted to Judge Marc B. Gilner. He issued the search warrant on July 20, 2001. Thereafter, deputies searched Mr. Cano's residence. They seized various pieces of computer equipment, videotapes, and other property. The State then filed a thirty-three-count information against Mr. Cano. The first eleven counts of the information alleged various sexual crimes involving the victim. The remaining twenty-two counts alleged possession of a photograph, motion picture, or other presentation of sexual conduct by a child. The twenty-two counts of possession of photographs or motion pictures of sexual performance by a child were severed from the other charges involving the victim. Only the first eleven counts involving the victim were tried, and this appeal addresses only the convictions and sentences as to those charges.
Of the various items seized from Mr. Cano, the only item introduced into evidence that may have contributed to his conviction is a videotape that Mr. Cano took of himself while he was manicuring the victim's fingernails when she was twelve. On the videotape, he can be seen inserting his hand into her pants for a brief period. The victim testified extensively *134 during the trial. She confirmed the events shown on this tape, explaining that he placed his finger into her vagina.
When the information was filed, it was assigned to the division over which Judge Gilner presided. Mr. Cano filed a motion to suppress the items seized from his home. He also filed a motion to disqualify Judge Gilner on the ground that Judge Gilner had issued the search warrant. Judge Gilner denied both the motion to recuse and the motion to suppress. At the conclusion of the case, the jury convicted Mr. Cano of ten of the eleven counts, including three counts of capital sexual battery. Accordingly, he was sentenced to life in prison.

DISQUALIFICATION ISSUE
On appeal, Mr. Cano first challenges the order denying his motion to disqualify Judge Gilner. This motion alleges only that Judge Gilner issued the search warrant and, as a result of this act, should be disqualified from hearing the motion to suppress evidence obtained as a result of the warrant. We conclude that this motion is facially insufficient.
The fact that a judge has made adverse rulings in the past against a defendant or that the judge has previously heard the evidence are generally considered insufficient reasons to disqualify a judge. See Rivera v. State, 717 So.2d 477, 481 (Fla.1998). Although the parties have not cited any Florida case addressing the issue of whether a trial judge is obligated to recuse himself or herself when reviewing a search warrant issued by the judge, the case law of other states consistently permits a judge to handle a motion to suppress under these circumstances.[3] We likewise hold that, absent additional circumstances,[4] the fact that a trial judge issued a search warrant is not grounds to require disqualification of that judge from hearing a motion to suppress evidence obtained as a result of the search warrant.

APPLICATION OF FRYE TO PROBABLE CAUSE DETERMINATION
Mr. Cano argues that his motion to suppress the videotape should have been granted primarily because the trial court considered an affidavit containing a psychological profile of sex offenders. This profile described the typical person who commits repeated sex crimes involving one targeted child and those persons who involve themselves with child pornography on computers and the internet. He argues that such a sworn statement cannot provide probable cause for a search because it does not pass the Frye test. For support, Mr. Cano relies primarily on the supreme court's decisions in Flanagan v. State, 625 So.2d 827 (Fla.1993), and Hadden v. State, 690 So.2d 573 (Fla.1997).
In Flanagan, the supreme court held that expert testimony based on a sex offender *135 profile was inadmissible at trial in a capital sexual battery case because the profile did not meet the requirements for novel scientific evidence under Frye, 625 So.2d at 828. The prosecution offered this testimony in Flanagan to establish that the defendant was the person who committed the sexual battery and to imprison the defendant for life. Id. at 829. The evidence presented to the jury was regulated by the Florida Evidence Code and the decision of guilt needed to be based on evidence beyond a reasonable doubt. Although the supreme court held that the evidence of a sex offender profile should not have been introduced, it concluded that the error was harmless.
In Hadden, the supreme court decided that evidence of a "child sexual abuse accommodation syndrome" was also inadmissible at trial under the Frye standard. 690 So.2d at 575. In Hadden that evidence was used to help establish that the alleged victim was in fact sexually abused. Id. at 575-76. The use of this testimony was not harmless in Hadden.
In this case, the affidavit of the deputy described his experience and his knowledge or beliefs about the tendencies of child sexual offenders who utilize computers and cameras. We are not entirely convinced that the deputy provided expert testimony in his affidavit or that his testimony should be regarded as expert scientific evidence, but we make that assumption for purposes of this opinion. Neither the deputy nor the magistrate relied on this evidence to decide whether the young girl was a victim of sexual abuse or whether Mr. Cano was the perpetrator. This evidence was utilized merely to determine the scope of the search and to conclude that the other evidence supporting the search was not stale.[5] The issue of staleness was decided in a context where the underlying sexual misconduct had been ongoing for many years and the evidence about the digital photographs in the computer was about eight months old.
Under section 933.04, Florida Statutes (2001), the magistrate used this evidence to determine the existence of probable cause, not to determine a fact beyond reasonable doubt. In determining probable cause, a magistrate considers the totality of the circumstances and evaluates evidence to establish a "probability, and not a prima facie showing, of criminal activity." Illinois v. Gates, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (quoting Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)). A magistrate can quite properly issue a search warrant "on the basis of [his or her own] nontechnical, commonsense judgments," and may apply a standard less demanding than those used in more formal legal proceedings. Gates, 462 U.S. at 236, 103 S.Ct. 2317. A search warrant results in a limited invasion of privacy and property rights and does not directly affect liberty in the way that a criminal trial affects liberty.
It is well established that a search warrant can be issued based upon affidavits and hearsay evidence. See Lara v. State, 464 So.2d 1173 (Fla.1985). There is no requirement that probable cause to issue a search warrant be based only on evidence that would be competent at trial. 68 Am.Jur.2d Search and Seizure § 185 (2000). The type of thorough consideration *136 given at trial to relevance or to the prejudicial effect of evidence versus its probative value is not feasible or appropriate when a magistrate issues a search warrant. The restrictive standards of Frye, while not entirely out of place when issuing a warrant, are not essential to that process. Moreover, the Frye approach to novel scientific evidence contemplates an adversarial hearing that occurs only when the opposing party objects to the evidence. Hadden, 690 So.2d at 580. This methodology is not particularly adaptable to the procedures used to obtain a search warrant under chapter 933, Florida Statutes (2001). The only out-of-state case that we have located addressing this issue refused to apply the Frye procedures to a magistrate's ex parte decision to issue a search warrant. See Fitzgerald v. State, 153 Md. App. 601, 837 A.2d 989, 1016 (Ct. Spec.App.2003).
We do not wish to minimize the importance of a warrant or the evidence required to establish probable cause. We are not encouraging magistrates to issue warrants based on junk science or superstition. However, in this context, we believe that the affidavit contained some relevant and material evidence that helped justify the scope of the search and helped overcome any issue of staleness. Accordingly, we conclude that the trial court did not err in refusing to suppress the videotape seized during the search and that this tape was properly admitted into evidence during the trial.[6]
Affirmed.
DAVIS and SILBERMAN, JJ., concur.
NOTES
[1] Frye v. United States, 293 F. 1013 (D.C.Cir.1923).
[2] This person is described as a "preferential child molester."
[3] See Heard v. State, 574 So.2d 873, 874-75 (Ala.Cr.App.1990); Holloway v. State, 293 Ark. 438, 738 S.W.2d 796, 798 (1987); Arnold v. Commonwealth, 421 S.W.2d 366, 366-67 (Ky.1967); People v. Liberatore, 79 N.Y.2d 208, 581 N.Y.S.2d 634, 590 N.E.2d 219, 224 (1992); Waupoose v. State, 46 Wis.2d 257, 174 N.W.2d 503, 504 (1970); State v. Toce, 6 Conn.Cir.Ct. 192, 269 A.2d 421, 422-23 (1969); State ex rel. French v. Hendricks Superior Ct., 252 Ind. 213, 247 N.E.2d 519, 525 (1969); Trussell v. State, 67 Md.App. 23, 506 A.2d 255, 256 (Ct.Spec.App.1986); State v. Poole, 472 N.W.2d 195, 197 (Minn.Ct.App. 1991); State v. Smith, 113 N.J.Super. 120, 273 A.2d 68, 78 (App.Div.1971); Irwin v. State, 441 S.W.2d 203, 208-09 (Tex.Crim.App. 1969). But see Bliss v. State, 282 Ark. 315, 668 S.W.2d 936 (1984).
[4] See Fla. R. Jud. Admin. 2.160; Thompson v. State, 759 So.2d 650 (Fla.2000) (stating prior adverse ruling, alone, not sufficient).
[5] Interestingly, this additional evidence helps distinguish this case from Burnett v. State, 848 So.2d 1170 (Fla. 2d DCA 2003). In Burnett, we held an officer's affidavit was facially insufficient when it lacked any factual basis to support a probable cause determination. Id. at 1175. In many respects, the additional affidavit in this case is designed to overcome the problem presented in Burnett
[6] Our ruling is limited to the videotape. The photographs and other evidence that were seized during this search, which may be used to prove the offenses alleged in the severed counts, are not in our record and are not involved in this appeal.