994 So.2d 1000 (2008)
Dana WILLIAMSON, Appellant,
v.
STATE of Florida, Appellee.
Dana Williamson, Petitioner,
v.
Walter A. McNeil, etc., Respondent.
Nos. SC07-1787, SC07-564.
Supreme Court of Florida.
October 8, 2008.
*1004 Kevin J. Kulik, Fort Lauderdale, Florida, for Appellant/Petitioner.
Bill McCollum, Attorney General, Tallahassee, Florida, and Lisa-Marie Lerner, Assistant Attorney General, West Palm Beach, Florida, for Appellee/Respondent.
PER CURIAM.
Dana Williamson, an inmate under the sentence of death, appeals an order of the circuit court which summarily denied his motion to vacate his conviction of first-degree murder and sentence of death, filed pursuant to Florida Rule of Criminal Procedure 3.850. He also petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const.

FACTS
Williamson was convicted of numerous crimes stemming from a criminal incident that occurred on November 4, 1988. The jury found Williamson guilty of first-degree murder, armed burglary, extortion, three counts of attempted murder, five counts of armed kidnapping, and four counts of armed robbery. On direct appeal, this Court summarized the facts surrounding the crime and the evidence presented at trial. See Williamson v. State, 681 So.2d 688, 690-94 (Fla.1996). The jury recommended death by a vote of eleven to one, a recommendation which the trial court followed. In his sentencing order, the trial judge found three aggravating factors[1] and eleven mitigating factors.[2]
On direct appeal, Williamson raised eight issues: (1) evidence about a crime for which Williamson was convicted in 1975 was erroneously admitted during the guilt phase; (2) the extortion count should have been severed from the trial; (3) the trial court erroneously admitted irrelevant evidence regarding certain legal papers, which was presented to show that Williamson knew about legal forms; (4) the jury's verdict was not supported by competent, substantial evidence; (5) the trial court improperly rejected certain mitigating factors, failed to give sufficient weight to several nonstatutory mitigating factors, and improperly found the HAC aggravating factor, thus resulting in an erroneous sentence of death; (6) section 921.141, Florida Statutes, is unconstitutional; (7) the trial court should have granted Williamson's motion to suppress his statement *1005 to police; and (8) the trial court should have granted Williamson's motion for mistrial based on prosecutorial misconduct. This Court rejected each of Williamson's claims and affirmed his convictions and sentence of death. Williamson, 681 So.2d at 698.
In his motion for postconviction relief, Williamson raised eleven claims: (1) trial counsel was ineffective because he failed to object to the State's opening statement, which constituted an impermissible "golden rule" argument; (2) counsel was ineffective because he failed to object to the admission of a written waiver of immunity by the State's key witness despite the State's failure to disclose this document during discovery; (3) counsel was ineffective because he failed to impeach the State's sole eyewitness identification using the witness's original statement to the police; (4) counsel was ineffective because he failed to voir dire the State's expert witness on "influence and control," obviating a Frye hearing;[3] (5) counsel was ineffective because he failed to request a curative instruction after the court sustained a defense objection to testimony by the State's expert witness who vouched for the credibility of a key State witness; (6) counsel was ineffective because he failed to object to the State's unfairly prejudicial closing arguments; (7) counsel was ineffective because he failed to object to the State's characterization of the offense as "inexcusable"; (8) counsel was ineffective because he failed to object to the State's argument during the penalty phase that mitigating circumstances were "mere excuses"; (9) counsel was unauthorized to concede to Williamson's guilt during the penalty phase; (10) fundamental error occurred because the verdicts of attempted murder rested on the State's alternative theory of attempted first-degree felony murder, which became a nonexistent offense at the time that the convictions became final on direct appeal, requiring that the judgments and sentences be vacated pursuant to State v. Gray, 654 So.2d 552 (Fla.1995); and (11) based on this error, Williamson is entitled to a new penalty phase because these convictions tipped the jury's scales in favor of death. A Huff hearing[4] was held on July 23, 2004. On February 13, 2007, the postconviction trial court summarily denied all of the claims presented. Williamson files this appeal, raising all of the above claims except claim (9). He has also filed a petition for a writ of habeas corpus, raising the Gray claim.
We affirm the trial court's rulings in respect to all issues raised in the postconviction motion except those issues alleging that defendant's counsel was ineffective in failing to request a Frye hearing before the opinion testimony of the State's expert, Dr. Robert Ofshe, was admitted into evidence. On the issues concerning Dr. Ofshe's opinion testimony, we reverse and remand for an evidentiary hearing. We deny in part the petition for a writ of habeas corpus and grant it in part.

ANALYSIS
In the majority of Williamson's claims, he asserts that his trial counsel was ineffective, based on numerous alleged errors. In order to establish a claim for ineffective assistance of trial counsel, Williamson must meet both requirements of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed *1006 the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Prejudice is met only if there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052.
In this case, the postconviction trial court denied all of Williamson's claims without holding an evidentiary hearing. In Freeman v. State, 761 So.2d 1055, 1061 (Fla.2000), this Court provided the following standard for determining whether an evidentiary hearing is required in a postconviction proceeding:
[A] defendant is entitled to an evidentiary hearing on a postconviction relief motion unless (1) the motion, files, and records in the case conclusively show that the prisoner is entitled to no relief, or (2) the motion or a particular claim is legally insufficient. The defendant bears the burden of establishing a prima facie case based upon a legally valid claim. Mere conclusory allegations are not sufficient to meet this burden. However, in cases where there has been no evidentiary hearing, we must accept the factual allegations made by the defendant to the extent that they are not refuted by the record. We must examine each claim to determine if it is legally sufficient, and, if so, determine whether or not the claim is refuted by the record.
With these standards in mind, we turn to Williamson's claims.
In his first claim, Williamson asserts that his trial counsel was ineffective in failing to object to a golden rule argument. Specifically, after the prosecutor informed the jury about the threats that Charles Panoyan received, the prosecutor commented, "Charles Panoyan is the person I was [alluding] to in voir dire when I asked if you had ever been between a rock and a hard place." The postconviction trial court denied this claim, holding that the statements did not reach the level of an impermissible golden rule argument because the prosecutor did not ask the jurors to place themselves in Panoyan's position. Instead, the court found that the questions about fear and behavior were posed to the venire because they were relevant as to whether a juror would make a fair and impartial decision without personal bias. The court further held that Williamson failed to allege how this comment prejudiced him.
This Court has defined a golden rule argument to be an argument where an attorney "asks the jurors to place themselves in the victim's position, asks the jurors to imagine the victim's pain and terror or imagine how they would feel if the victim were a relative." Hutchinson v. State, 882 So.2d 943, 954 (Fla.2004). This Court has also held that the "imaginary scenario" argument where the prosecutor asks the jurors to put his or her own imaginary words in the victim's mouth is a subtle form of the golden rule argument. See, e.g., Urbin v. State, 714 So.2d 411, 421 (Fla.1998). In reviewing Williamson's claim, we agree with the circuit court. The comment at issue here does not constitute an improper golden rule argument because it does not ask the jurors to place *1007 themselves in the victim's position. Even if this was a golden rule argument, Williamson would still need to include sufficient allegations to demonstrate that his counsel was ineffective in failing to object to the prosecutor's statement and that he suffered prejudice as a result of that failure. This he has not done. Accordingly, we deny this claim.
Next, Williamson asserts that his counsel was ineffective in failing to object to the admission of a written waiver of immunity by the State's key witness, Panoyan, and that counsel was ineffective in failing to ensure that an adequate Richardson[5] hearing occurred. In this claim, however, postconviction counsel does not assert that the information itself was inadmissible. Instead, he asserts that counsel was ineffective in failing to object to the document because the State failed to disclose the waiver prior to trial. The postconviction court denied this claim, finding that a Richardson inquiry was held and that counsel would not be able to demonstrate any error with admitting the document because defense counsel had the opportunity to inquire into whether Panoyan had entered into any deals. The court further found that even if this was error, it was harmless. We agree.
In Richardson, this Court held that where a defendant points out a discovery violation, the trial court must make an adequate inquiry that at a minimum considers the following circumstances: "whether the state's violation was inadvertent or willful, whether the violation was trivial or substantial, and most importantly, what effect, if any, did it have upon the ability of the defendant to properly prepare for trial." Id. at 775 (quoting Ramirez v. State, 241 So.2d 744 (Fla. 4th DCA 1970)). In reviewing the record in this case, we find that Williamson's assertion fails both the deficiency and prejudice prongs of Strickland. First, defense counsel did inform the trial court as to the problem. The trial court, in response, held a Richardson hearing at which the trial court inquired into each of the three necessary prongs as required by Richardson. When the court questioned the prosecutor about the failure to disclose the document, the prosecutor informed the judge that he thought he had given the written waiver to the defense, and any failure to disclose this document was inadvertent. The court asked defense counsel about the impact of the waiver and any prejudice he suffered, specifically asking counsel whether he previously knew if Panoyan had made a deal or not. Defense counsel did not inform the trial judge as to any effect the failure to produce this document would have had on Williamson's ability to properly prepare for trial. In fact, Williamson has not alleged how he was prejudiced in his trial defense by the admission of this document. As Williamson has not alleged sufficient allegations to support either Strickland prong, we deny this claim.
In his third claim, Williamson asserts that his trial counsel was ineffective in failing to question Panoyan as to a prior contradictory statement Panoyan initially gave to police officers when Panoyan told them that he never saw the assailant without his mask and could not determine even the assailant's race. The postconviction court denied relief as follows:
Having reviewed the record, this Court agrees with the State that Capital Collateral Counsel initially mischaracterized Panoyan's November 1988 statements. Additionally, the jury was informed that Panoyan failed to identify the Defendant or his brother in Panoyan's initial statement to the police that evening, even though Panoyan provided *1008 an account of what happened at the Decker home. However, he gave inaccurate information as to the identity of the assailant. On direct examination, the State elicited from Panoyan that because he was afraid, he gave an inaccurate description to the police because of what he saw at the Decker home that evening and what Dana Williamson said he would do to Panoyan's family.
The record also reflects that defense counsel attacked Panoyan's credibility from the onset of the trial, starting with his opening statement arguing that "Panoyan was going to come in and tell the jury `one hell of a story' to avoid the electric chair." Furthermore, defense counsel also reminded the jury that Panoyan was an original co-defendant in the case who never identified the Williamsons until three years after the crimes were committed and counsel also warned the jury that "the State had made a deal with the devil and that [the jury] should listen closely to Panoyan's account of the events which did not match ... the statements of the other two innocent victims."
The instant record reflects that on Panoyan's cross examination, trial counsel did elicit from Panoyan that he was originally a defendant in the case, was arrested in May of 1990 and he was held without bond for eighteen months until he was "inexplicably" released on his own recognizance in November of 1992. Trial counsel also elicited testimony from Panoyan that he never requested a court order to be kept separate and apart from Williamson while both were held in the same jail during that year and one half (1/2) and that Panoyan maintained a "friendship" with Williamson, and he laughed and joked with Williamson in jail. Panoyan was also impeached as to his deposition testimony regarding how he had spent his time waiting for Robert Decker to return to his home and Panoyan was also impeached about the cowboy hat worn by Dana Williamson.
Contrary to the Defendant's assertions, this Court finds that trial counsel continued to attack Panoyan's credibility describing each of the conflicts in Panoyan's testimony and trial counsel was constantly reminding the jury that Panoyan was initially thought to have been guilty of the crimes.
State v. Williamson, No. 92-15642CF10A (Fla. 17th Jud. Cir. Ct. order filed Feb. 13, 2007) at 19-20 (Huff Order) (record citations omitted). We find no error in the postconviction trial court's conclusion that Williamson failed to demonstrate that his counsel was ineffective. As the postconviction court aptly pointed out, the jury was aware that Panoyan did not reveal any information about the assailant until three years after the crime, and defense counsel continuously attacked Panoyan's credibility throughout the trial. Since the record refutes Williamson's claim as to ineffective assistance of counsel, Williamson is not entitled to relief on this claim.
In his next two claims, Williamson asserts that his trial counsel was ineffective because counsel failed to voir dire State expert Dr. Ofshe, failed to request a Frye hearing for the novel science upon which Dr. Ofshe relied, and failed to request a curative instruction after the trial court sustained objections to Dr. Ofshe's testimony. As to these claims, the record reflects that during the trial, while the State was still presenting the testimony from Panoyan, the State asked if it could take a witness out of turn because its expert witness, Dr. Ofshe, needed to get back to California that night. Defense counsel informed the court that although counsel had read through the expert's statement and read through the expert's interview with Panoyan, defense counsel had not yet *1009 had an opportunity to question this out-of-state expert witness. Defense counsel asked to question Dr. Ofshe before Panoyan's cross-examination began, asserting that he did not want his cross-examination of Panoyan to be split up by the expert witness. The trial judge agreed, and counsel was given an opportunity to talk to Dr. Ofshe. The State then called Dr. Ofshe and questioned him about his qualifications, establishing that Dr. Ofshe received a Ph.D. in sociology, specialized in tactics of influence, authored a book on individual decision-making, and authored numerous articles on the subject of extreme and extraordinary techniques of influence and control. The State tendered Dr. Ofshe as an expert in the field of extreme techniques of influence and control, and after defense counsel declined to voir dire the witness, the court declared him to be an expert in that subject.
On direct examination, Dr. Ofshe testified that he reviewed two depositions taken of Panoyan, examined statements Panoyan gave to the police, and interviewed Panoyan. Dr. Ofshe then provided his opinion as to this case:
Q. [The State] But did you have the opportunity to discern any kind of control or influence that had been exercised by Dana Williamson according to the attestation of Charles Panoyan, which degrees or kinds of control you recognized?
A. [Dr. Ofshe] Yes.
Q. Would you tell us, please.
A. Well, in reviewing the history of Mr. Panoyan's experience in connection with the invasion and the death and the assaults at the Decker residence, and over the course of the investigation that followed, including his incarceration and ultimate decision to speak about what happened, the pattern that he displays is a pattern of someone who has, for one [sic] of a better word, been terrorized, and someone who is acting in response to a credible threat, not only to himself, but also, and to some degree, more importantly, to members of his family.
And that the manner in which he responds at various points indicates quite clearly that he has a great concern about something happening to his family, which he revealed to me in the interview I did with him, and I gather, revealed again in testimony that you heard.
And there is a sequence over the course of his involvement that's consistent with this, including who he tried to compromise between the fear that he had for himself, the fear that he had for his family and his desire to aid the Decker family.
The point at which he chose to do certain things reflects the kind of threat and fear he was acting under, and the particular decisions that he made to me are completely consistent with what he says about the sort of threats that he was exposed to.
We conclude that this testimony is the kind of expert opinion testimony which should have been tested by the trial court in accord with the Frye standard before the testimony was admitted into evidence. The postconviction court, however, summarily denied Williamson's claim pertaining to the lack of any voir dire, first holding that this claim was insufficiently pled because Williamson failed to specifically allege what information he would have elicited to exclude Dr. Ofshe's testimony. We disagree that the claim was insufficiently pled. As a part of this claim, Williamson asserted that his trial counsel did not request a Frye hearing as to Dr. Ofshe and Dr. Ofshe's testimony that Panoyan's reaction fit the profile of one who had experienced the type of threat claimed by Panoyan. This Court has recognized in Frye hearings that "[t]he proponent of the evidence *1010 bears the burden of establishing by a preponderance of the evidence the general acceptance of the underlying scientific principles and methodology." Castillo v. E.I. Du Pont De Nemours & Co., Inc., 854 So.2d 1264, 1268 (Fla.2003). Because we conclude that this testimony required a Frye hearing, Williamson does not need to provide specific factual allegations as to what his trial counsel should have elicited from the expert. It was defense counsel's obligation to request a Frye hearing regarding the general acceptance of the underlying scientific principles and methodology, and if he had done so, the burden would have shifted to the State to show that Dr. Ofshe's testimony could meet the Frye test.
We recognize that the postconviction court did further hold that even if it reviewed the merits of the claim, summary denial of the claim was appropriate because there was competent and substantial evidence to support the trial court's finding that Dr. Ofshe was an expert in his field and his testimony was not subject to a Frye analysis because Dr. Ofshe was providing pure opinion testimony. We disagree.
As noted earlier, in accord with the Frye standard, we have held "in order to introduce expert testimony deduced from a scientific principle or discovery, the principle or discovery `must be sufficiently established to have gained general acceptance in the particular field in which it belongs.'" Flanagan v. State, 625 So.2d 827, 828 (Fla. 1993) (quoting Frye, 293 F. at 1014). The postconviction trial court recognized our adherence to Frye and was correct in also recognizing that we have held that a Frye hearing is not necessary in respect to what we have characterized as "pure opinion" testimony. See Flanagan, 625 So.2d at 828. But we do not agree with the circuit court that Dr. Ofshe's testimony was such "pure opinion testimony." We conclude that Dr. Ofshe's testimony was the kind of expert testimony which we held in Flanagan and in Hadden v. State, 690 So.2d 573 (Fla.1997), to require a Frye evaluation by the trial judge. In Hadden, the State proffered expert opinion testimony from a mental health counselor which was "offered to prove the alleged victim of sexual abuse exhibit[ed] symptoms consistent with one who has been sexually abused." Id. at 575. Defense counsel objected, asserting that the testimony lacked scientific reliability. The trial court overruled the objection and permitted the expert to testify. Hadden was subsequently convicted of lewd assault. On appeal, the First District Court of Appeal held that this testimony did not need to be subject to a Frye test because this type of expert testimony was not new or novel or, alternatively, the testimony was opinion testimony not covered by Frye. Id. at 576. This Court disagreed, holding that syndrome testimony in child abuse prosecutions is not pure opinion testimony.
In this case, Dr. Ofshe testified that Panoyan "displayed a pattern of someone who has ... been terrorized, and someone who is acting in response to a credible threat." We find that, similar to Hadden, this was syndrome testimony and should have been tested as to whether it was sufficiently established to have general acceptance in the particular field in which it belongs. Frye, 293 F. at 1014. We find summary denial of this claim is inappropriate and thus reverse the circuit court's order and remand the claim for an evidentiary hearing. At the evidentiary hearing, the circuit court should consider evidence concerning the effectiveness of counsel, including the reasons counsel failed to request a Frye hearing. In respect to prejudice, the circuit court is to make a determination as to whether this evidence was generally accepted in its particular field. If the circuit court determines *1011 that the evidence should not have been admitted into evidence, the court should determine whether the admission of the evidence was prejudicial under Strickland, i.e., whether there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. As we stressed above, "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.
In a related claim, Williamson asserts that his counsel was ineffective in failing to request a curative instruction after the court sustained an objection pertaining to Dr. Ofshe's opinion as to whether the threat was credible. The postconviction trial court denied this claim, finding that Williamson mischaracterized the circumstances surrounding Dr. Ofshe's testimony because after trial counsel objected to Dr. Ofshe's testimony, the court conducted a sidebar conference so that the jury did not hear Dr. Ofshe's answer to the question to which counsel objected. We find that the postconviction court interpreted the defendant's claim too narrowly. In looking to the specific claim that Williamson presents, Williamson does not assert that trial counsel was ineffective because the jury heard testimony and argument presented during the sidebar conference. Instead, Williamson asserts that his counsel was ineffective because counsel resisted only at sidebar when the State attempted to link a hypothetical with the believability and credibility of the threat to which Panoyan testified and that his counsel was ineffective when the trial court sustained his objections and counsel did not seek curative instructions based on the prior testimony. Since the actual statements to which defense counsel objects are the subject of the claim upon which we reverse and remand for an evidentiary hearing, we likewise remand this claim to the postconviction court for an evidentiary hearing.
In his sixth claim, Williamson asserts that his counsel was ineffective in failing to object to three comments during the State's closing argument. In his first subclaim, Williamson objects to a portion of the closing argument where the prosecution stated that it filed the charges because they were warranted. Specifically, the prosecutor made the following argument:
Let me summarize for you what the law is basically about with respect to the charges that Dana Williamson is accused. He's charged with murder in the first degree. [You're] going to learn, ladies and gentlemen, there are two ways to commit murder in the first degree. One is premeditated murder, conscious intent to kill....
The other way to commit first degree murder is if someone dies or is killed during the course of committing a robbery or burglary. Which is also known as armed burglary. A burglary is a crime against property, against house. You also have robbery at the same time because you have people inside the house. Robbery is a crime against persons.
You better believe that we filed the charges, because it's warranted. Robbery against each person in the house who had property in the house that was taken or any control over that property. Burglary against house and two vehicles that were taken or anything taken out of the house.
So, as you analyze these counts, and let's go down them. We have murder in the first degree of Donna Decker, and also the attempted murder after Bob, Clyde and Carl. Armed burglary of Bob and Donna Decker's home where the property was taken.
*1012 The prosecutor went on to describe the armed burglary of Bob Decker's van, armed burglary of Charles Panoyan's truck, kidnapping of all of the victims, and armed extortion against Charles Panoyan, discussing how the evidence supported each of the charges against Williamson. The postconviction court denied this claim, holding that the prosecutor's statement was a "fair comment on the evidence, and even if there was an error, the error was not fundamental and would have been harmless beyond a reasonable doubt." Huff Order at 27.
In Ruiz v. State, 743 So.2d 1 (Fla.1999), this Court held that an attorney's role in closing arguments is to simply assist the jury in analyzing, evaluating, and applying the evidence, including the attorney's suggestions as to what conclusions can be drawn from the evidence. Id. at 4. An attorney cannot, however, obscure the jury's view with personal opinion about the merits of the case or the credibility of the witnesses. Ruiz explicitly warned that "[i]t is particularly improper, even pernicious, for the prosecutor to seek to invoke his personal status as the government's attorney ... as a basis for conviction of a criminal defendant." Id. at 4. In Ruiz, the prosecutor stated in her closing argument, "What interest do we as representatives of the citizens of this county have in convicting somebody other than the person," to which the defense objected. Id. at 5. The Court found that this statement, in conjunction with two other very prejudicial closing arguments, required a reversal because the "integrity of the judicial process [was] compromised and the resulting convictions and sentences irreparably tainted." Id. at 7.
In reviewing the closing statement in its full context, we find that the comment at issue is not of the same nature as Ruiz where the prosecutor clearly used the prosecutor's personal status as the government's attorney as a basis for the conviction. The argument at issue here is not a comment wherein the prosecutor was giving his personal opinion that he believed Williamson was guiltyinstead, the statement was to explain that the State filed so many charges because each charge was based on different conduct. The State made this comment when describing each of the charges and then immediately pointed out the evidence in the record to show that each charge was based on different actions.[6]
This case also differs from Ruiz because Ruiz was before the Court on a direct appeal. In Bell v. State, 965 So.2d 48 (Fla.2007), this Court described the difference between raising such claims in a postconviction claim and in a direct appeal claim. As this Court explained, "In a direct appeal review, there is no prejudice prong consideration like there is in consideration of a claim of ineffective assistance of counsel in a postconviction claim under Strickland." Id. at 61. Here, the trial record does not support Williamson's claim that the comment resulted in the prejudice required by Strickland. Accordingly, we deny this subclaim.
In his second subclaim, Williamson asserts that during part of the closing argument, the prosecutor impermissibly vouched for Panoyan's credibility. The record shows that after defense counsel attacked Panoyan's credibility and asserted that Panoyan told several different versions of his story, the prosecutor replied in his closing argument that Panoyan told one consistent version, other than refusing to provide any information as to the assailant because he was afraid for his safety *1013 and the safety of his family. The prosecutor then stated as follows:
And as Doctor [Ofshe] testified, this is not unusual. This is something that when somebody is subjected to very real, believable threats, that when he knows that the accuser or threatener is able to carry it out, it is something a human being can react inappropriately to and be subjected to coercion and can come under the influence of the coercive party, particularly when you're in between a rock and a hard place.
....
We know that Charles Panoyan there came a point that he was released. [Defense counsel] says, well, how do we know whether or not he was tied up too? Well, we have Charles Panoyan's testimony. [Defense counsel] criticizes other aspects of Charles Panoyan's testimony. He says to you, just on the faith of Charles Panoyan's testimony alone. Which I suggest to you is credible.
You had an opportunity to review his demeanor and the way he answered the questions.
The postconviction court denied this portion of the claim, finding that when this portion of the closing argument is read in context, the prosecutor did not vouch for the witness's credibility. The postconviction court further held that the arguments were a "fair reply" to defense counsel's assertion in closing arguments that the jury should not believe Panoyan.
This Court has long recognized that "[i]t is improper to bolster a witness' testimony by vouching for his or her credibility." Gorby v. State, 630 So.2d 544, 547 (Fla.1993). As this Court later explained, "Improper bolstering occurs when the State places the prestige of the government behind the witness or indicates that information not presented to the jury supports the witness's testimony." Hutchinson, 882 So.2d at 953. In turning to the challenged statements here, when the statements at issue are viewed in their context, we agree with the postconviction court that the prosecutor did not vouch for the credibility of the witness. The prosecutor did not say that he believed the threats were real and believable. Moreover, while the prosecutor suggested Panoyan's testimony was credible, this was a fair reply to the defense's closing argument that Panoyan's testimony was not believable. Immediately after this statement, the prosecutor asked the jury to think about Panoyan's demeanor and how he answered the questions, encouraging the jurors to rely on their own impressions as to the witness's credibility. In Dailey v. State, 965 So.2d 38, 44 (Fla.2007), this Court rejected a similar contention, holding that the prosecutor's alleged improper vouching for a state witness was a fair comment in response to defense counsel's attack on the witness's credibility during closing argument when defense counsel referred to the witness as a "professional thief" and a poor police officer. See also Rogers v. State, 957 So.2d 538, 548 (Fla. 2007) (rejecting the defendant's position that the State improperly bolstered certain witnesses because such statements were in response to defense attacks as to witness credibility; further holding that the postconviction court did not err in summarily denying the claims without an evidentiary hearing since there was no factual dispute as to what each attorney said during their respective arguments).
In his final subclaim on this issue, Williamson asserts that his trial counsel was ineffective in failing to object when the prosecutor stated that there was another victim who did not testify. Specifically, the prosecutor made the following argument in closing:
There's another witness that you didn't hear from, because he's a child and he's a baby. He's still a baby. He's *1014 just 9 years old. He saw this piece of bathrobe around his mother's neck. I submit to you, ladies and gentlemen, that how I know is because Yvonne Rutherford came on the witness stand and told you, among other things, the worst thing I had to do was tell this little boy that his momma died.
And this is what he was doing, he's putting a gag around his toy's mouth, and that's not right. And used his hand like a knife was in it and was stabbing at the doll. What does this tell us? That he's a witness to everything that happened that night, including his mother's location in the hallway. His mother losing her life in that hallway that night. Donna Decker fought for her life that night.
The postconviction court denied this claim, holding that the jury was well aware that the child was a witness to the events and that even if the comment was improper, it did not give rise to an error in which there would have been a reasonable probability that the outcome of the proceeding would have been different. We agree with the postconviction court. The prosecutor did not rely on non-record evidence. The jury heard significant evidence regarding the crimes which occurred that night, including testimony that Carl was taken to the back room and shot in the head even though he was just two because Williamson thought Carl would be able to identify him. None of the statements pointed out by Williamson involve statements where the State was relying upon non-record evidence. Since the statements were not improper, we deny the claim that defense counsel was ineffective for failing to object to them.
In his seventh claim, Williamson asserts that his trial counsel was ineffective when he failed to object to closing arguments in the penalty phase when the prosecutor called the crimes inexcusable, particularly since the trial court instructed jurors on excusable homicide. During its opening statement at the penalty phase, the State made the following argument:
And listen, ladies and gentlemen, to the mitigating circumstances. And as you listen to them, as you listen to these excuses, think about whether or not these excuses outweigh the inexcusable thing he did. The inexcusable thing that Dana Williamson did to Donna Decker. Inexcusable thing he did to Donna Decker's family. Her husband. Her father-in-law. Her baby.
The postconviction court denied this claim, finding that defense counsel was not ineffective for failing to object "because it is abundantly clear that the jury could not have been [misled] by that comment, after having already found the Defendant guilty of Donna Decker's homicide." We find no error in the circuit court's conclusion. Defense counsel had no grounds upon which to object to this comment during the penalty phase. By its guilt-phase verdict, the jury had rejected Williamson's contention that "excusable homicide" applied to the facts. Thus, the comment that the crimes were inexcusable, which was made during the penalty phase, could not mislead the jury as to a decision which they already made during the guilt phase.
In his next claim, postconviction counsel attacks the same penalty-phase closing argument, asserting that trial counsel was ineffective in failing to object to the word "excuses" when the prosecutor stated, "And as you listen to them, as you listen to these excuses, think about whether or not these excuses outweigh the inexcusable thing he did." This Court has long recognized that a prosecutor cannot improperly denigrate mitigation during a closing argument. See Brooks v. State, 762 So.2d 879, 904 (Fla.2000) (holding that characterizing mitigating circumstances as *1015 "excuses" was an improper denigration of the case offered in mitigation). However, we do not reach the assertion in this claim that counsel was ineffective under Strickland because we find no error in the postconviction court's determination that Williamson failed to meet the prejudice prong of Strickland. The sentencing judge found three aggravating circumstances: (1) Williamson was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person; (2) the capital felony was committed while Williamson was engaged or was an accomplice in the commission of or an attempt to commit burglary, robbery, and kidnapping; and (3) the capital felony was especially HAC. As detailed above, he found evidence supporting eleven nonstatutory mitigating factors and gave each factor some or little weight. In reviewing the comments in light of the record, we do not conclude that the brief mention of the word "excuses" undermines confidence in the outcome. Thus, we affirm the postconviction court's ruling; even accepting Williamson's allegations as true, his allegations do not establish prejudice.
In his final claims, Williamson asserts that this Court should vacate his convictions for attempted murder based on the Court's decision in Gray. Williamson actually presents three separate claims based on Gray: (1) the likelihood that the verdicts in Counts II through IV rested on the State's alternative theory of attempted first-degree felony murder constitutes a fundamental error and requires that the judgments for attempted murder be vacated and set aside; (2) fundamental error requires a new penalty-phase trial because the attempted first-degree felony murder convictions tipped the jury's scales in favor of a death recommendation;[7] and (3) a habeas claim that appellate counsel was ineffective in failing to raise a Gray error on direct appeal.
Because the claim is better addressed as an ineffective assistance of appellate counsel claim, we start our analysis by reviewing the petitioner's burden in such claims.
The issue of appellate counsel's effectiveness is appropriately raised in a petition for writ of habeas corpus. However, ineffective assistance of appellate counsel may not be used as a disguise to raise issues which should have been raised on direct appeal or in a postconviction motion. In evaluating an ineffectiveness claim, the court must determine
whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.

Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986). The defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based. See Knight v. State, 394 So.2d *1016 997 (Fla.1981). "In the case of appellate counsel, this means the deficiency must concern an issue which is error affecting the outcome, not simply harmless error." Id. at 1001.
Freeman, 761 So.2d at 1069 (some citations omitted).
Williamson was convicted of three counts of attempted murder. One of the alternative bases for these convictions was based on the crime of attempted first-degree felony murder. At the time of the trial, this Court had affirmatively held that attempted felony murder was a crime in this state. See Amlotte v. State, 456 So.2d 448, 449 (Fla.1984). Justice Overton dissented, stating that "the crime of felony murder is based upon a legal fiction which implies malice aforethought from the actor's intent to commit the underlying felony"; thus, extending the felony murder doctrine to attempted felony murder "make[s] intent irrelevant for purposes of the attempt crime" and is "illogical and without basis in law." Amlotte, 456 So.2d at 450-51 (Overton, J., dissenting). While Williamson's case was on appeal before this Court, we issued our opinion in State v. Gray, 654 So.2d 552 (Fla.1995), which receded from Amlotte and held that "the application of the majority's holding in Amlotte has proven more troublesome than beneficial and that Justice Overton's view is the more logical and correct position." Id. at 553. The Court held that the Gray decision "must be applied to all cases pending on direct review or not yet final." Id. at 554. Appellate counsel did not raise the Gray claim, even though our holding in Gray would have required that this Court reverse the convictions for attempted first-degree murder. See, e.g., Mungin v. State, 689 So.2d 1026, 1030 (Fla.1995) (holding that a "general guilty verdict must be set aside where the conviction may have rested on an unconstitutional ground or a legally inadequate theory") (footnotes omitted); Valentine v. State, 688 So.2d 313, 317 (Fla.1996) (reversing convictions for attempted first-degree murder based on Gray where the jury's verdict may have relied on a legally unsupportable theory). We find that Williamson has shown that his appellate counsel was ineffective in failing to raise this claim, and the error in failing to raise this claim undermines confidence in the correctness of these particular convictions. Accordingly, we vacate Williamson's convictions and sentences for attempted first-degree murder.
Williamson alleges that he is entitled to a new penalty-phase trial because the death sentence rested in part on the aggravating circumstance that Williamson was convicted of a felony involving the use or threat of violence which, in turn, was supported in part by the convictions for attempted first-degree murder. Contrary to Williamson's assertion, we conclude that this error does not require a new penalty-phase trial because it had no effect on the sentence of death. Even without the convictions for attempted first-degree murder, we are convinced beyond a reasonable doubt that the death penalty would have been imposed given the nature and extent of the remaining aggravating and mitigating circumstances. Evidence presented during Williamson's trial established two other prior violent felony convictions to support the prior violent felony aggravator, including evidence that Williamson had killed a four-year-old child with a baseball bat. Moreover, this case involved considerable aggravation and minimal mitigation, especially in considering the quality of the mitigation presented. The jury's consideration of the convictions for attempted first-degree murder is harmless beyond a reasonable doubt. See also Valentine, 688 So.2d at 317 (holding that defendant was not entitled to new penalty-phase trial even where court reversed his conviction *1017 for attempted first-degree murder based on Gray); Owen v. State, 596 So.2d 985, 989-90 (Fla.1992) (rejecting claim that defendant was entitled to new penalty-phase trial after trial court used three convictions which were later reversed because sentence would have been the same based on nature and extent of other evidence in aggravation).

CONCLUSION
We affirm the postconviction trial court's order denying postconviction relief, with the exception of the claims pertaining to Dr. Ofshe. As to those claims, we remand for an evidentiary hearing and direct the court to address both whether this alleged error constitutes ineffective assistance of counsel and whether prejudice occurred. With regard to Williamson's petition for a writ of habeas corpus, we hold that Williamson has met his burden of establishing that his appellate counsel was ineffective for failing to raise the Gray claim and that he suffered prejudice from this failure. Thus, we grant in part the petition for a writ of habeas corpus and vacate Williamson's convictions and sentences for attempted first-degree murder. We deny his habeas petition to the extent that he asserts that this error affects his conviction for first-degree murder and his sentence of death.
It is so ordered.
QUINCE, C.J., and WELLS, ANSTEAD, PARIENTE, and LEWIS, JJ., concur.
WELLS, J. specially concurs with an opinion.
CANADY and POLSTON, JJ., did not participate.
WELLS, J., specially concurring.
I concur with the majority opinion in all parts except that I would reverse and remand for a new trial rather than an evidentiary hearing. The decision as to guilt in this case was essentially a decision as to the credibility of Mr. Panoyan. I conclude that the admission of the testimony of Dr. Ofshe was error and that the error was prejudicial because Dr. Ofshe's testimony improperly bolstered the credibility of Mr. Panoyan.
I concur that counsel was ineffective for not requesting a Frye hearing[8] before Dr. Ofshe was allowed to express his opinion to the jury. However, my analysis goes one step further. I would hold that Dr. Ofshe's opinion testimony was sufficiently similar to the profile and syndrome testimony we found to be inadmissible in Flanagan v. State, 625 So.2d 827 (Fla.1993), and Hadden v. State, 690 So.2d 573 (Fla. 1997), that the opinion testimony should have been held inadmissible under Frye. I specifically point to Dr. Ofshe's stated methodology of reaching his conclusions by comparing Mr. Panoyan's history and the "pattern he displays with the pattern of someone who has been terrorized." In Hadden, we held that the appropriate standard of review of the Frye issue is de novo. I would here make the decision that Dr. Ofshe's testimony was not generally accepted in the relevant field.
I believe that the relevant field would be psychology.[9] Dr. Ofshe's opinion was found to lack acceptance in the relevant scientific community in United States v. Fishman, 743 F.Supp. 713 (N.D.Cal.1990). In Fishman, the Court stated that neither the American Psychological Association *1018 nor the American Sociological Association had endorsed the views of Dr. Ofshe on coercive persuasion. Id. at 717. An Illinois court affirmed the exclusion of Dr. Ofshe's testimony on the basis of Frye in People v. Rivera, 333 Ill.App.3d 1092, 267 Ill.Dec. 557, 777 N.E.2d 360 (2001). I agree with these decisions.
Additionally, though not specifically argued as a basis for reversal of the trial court's denial of postconviction relief, I also find defense counsel was ineffective in not objecting to Dr. Ofshe's testimony on the basis that the opinions of Dr. Ofshe were not of such a nature as to require any special knowledge or experience for the jury to form conclusions as to the subject about which Dr. Ofshe opined. In Johnson v. State, 393 So.2d 1069, 1072 (Fla. 1980), we noted that expert testimony should be excluded where the facts testified to are of such a nature as to not require any special knowledge or experience in order for the jury to form conclusions from the facts.
The essence of Dr. Ofshe's opinion was that based on Mr. Panoyan's testimony regarding what he witnessed during the Decker crimes and knowledge about Williamson's prior violent criminal act, Mr. Panoyan's earlier contrary statements to the police were made out of fear that Williamson would harm his family. I conclude that the jury was capable of evaluating the credibility of Mr. Panoyan on the basis of its own knowledge and experience. If the jury believed Mr. Panoyan, the jury did not need expert opinion as to whether Mr. Panoyan would fear for his family. Dr. Ofshe only served the purpose of being a witness with academic credentials who bolstered the credibility of Mr. Panoyan with an opinion which was within the common experience of average jurors.
Furthermore, I conclude that under the circumstances of this case, Dr. Ofshe's testimony was prejudicial. The State relied upon Dr. Ofshe's testimony in its closing argument. The value of hearing an expert vouch for Mr. Panoyan clearly could have tipped the scales in this tragic case. Dr. Ofshe's testimony undermines my confidence in the verdict.
NOTES
[1] The trial court found the following aggravators: (1) Williamson had been convicted of a prior violent felony; (2) the murder was committed during the commission of a burglary, robbery, and kidnapping; and (3) the murder was especially heinous, atrocious, or cruel (HAC).
[2] The trial court found the following mitigators: (1) Williamson had an exceptionally unhappy and unstable childhood; (2) he was deprived of parental love; (3) Williamson's life and psychological makeup were emotionally unstable; (4) Williamson's birth was "an accident"; (5) he was aware of the physical, emotional, and sexual abuse suffered by his mother; (6) Williamson was incarcerated at an early age; (7) Williamson was beaten as a child; (8) he spent many years in prison; (9) Williamson has little education; (10) he had a deprived childhood; and (11) his demeanor at trial was calm and under control.
[3] Frye v. United States, 293 F. 1013 (D.C.Cir. 1923).
[4] Huff v. State, 622 So.2d 982 (Fla.1993).
[5] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[6] While we do not find this comment to be a basis upon which to grant postconviction relief, we again point out to prosecutors that such comments should not be made.
[7] During oral argument, counsel also asserted that Williamson's conviction for first-degree murder also may have rested upon whether he was guilty of attempted murder, and hence this conviction, too, should be vacated. The record shows that while the first-degree murder conviction relied upon the alternative theory of felony murder, the felony murder charges did not rely on the crime of attempted murder. As to the second element of felony murder, the jury was instructed that it could find Williamson guilty of felony murder only if it found that the death of Donna Decker occurred as a consequence of the commission of, or attempt to commit, a robbery or burglary, or if it occurred as a consequence of escaping from the immediate scene of a robbery or burglary.
[8] Frye v. United States, 293 F. 1013 (D.C.Cir. 1923).
[9] I believe that counsel should have objected to Dr. Ofshe's expertise in the field of psychology since Dr. Ofshe had a degree in sociology. Moreover, Dr. Ofshe's career experience was teaching sociology, not psychology.