# Third District Court of Appeal

## State of Florida

Opinion filed October 16, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1622
Lower Tribunal No. F17-14314C
_____

**Bahram Azin,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Mavel Ruiz, Judge.

Black Srebnick, P.A., and Benjamin S. Waxman, for appellant.

Ashley Moody, Attorney General, and Ivy R. Ginsberg, Assistant Attorney General, for appellee.

Before EMAS, GORDO and LOBREE, JJ.

EMAS, J.

## INTRODUCTION

Bahram Azin appeals his convictions and sentences for armed kidnapping (two counts), aggravated battery with a firearm (two counts), and simple battery (two counts, as lesser-included offenses of the original charges of armed robbery).

On appeal, Azin asserts (1) the evidence was legally insufficient to establish that Azin committed armed kidnapping or aggravated battery with a firearm, because the State failed to prove the item allegedly used by Azin met the legal definition of a firearm under section 790.001(9); and (2) the trial court abused its discretion in denying Azin's motion for new trial based on improper closing argument. For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Azin, together with co-defendants Ronnie Valle-Figueroa and Dimitri Moise, was charged by Information. His case was severed and proceeded to trial only as to Azin. The testimony and evidence, in a light most favorable to the jury's verdict, is as follows:

The two victims (Marvin Osavas and Carlos Garcia) were hired on May 16, 2017, to perform construction and renovation work at Azin's home. Azin hired the men, gave them a key to the house, and the men began their work. A few days later, several large appliances were discovered missing from

Azin's home. Azin came to believe Osavas and Garcia stole the appliances. However, Osavas and Garcia denied this, and continued working at the job site for several more days.

On May 26, 2017, Garcia was working alone in the house for a period of time. He was up on a ladder when Azin walked into the house, holding a small black gun. Azin pulled Garcia down off the ladder and onto the ground and hit Garcia in the face with the gun. A second man (later identified as co-defendant Valle-Figueroa) came into the house, and Azin and Valle-Figueroa began hitting Garcia with a baseball bat and a wooden two-by-four. Azin then put the gun in Garcia's mouth and accused Garcia of stealing his appliances. The men handcuffed Garcia, bound his legs and mouth with duct tape, took his wallet and cell phone, and continued beating Garcia on his legs, back and head. They then put Garcia in a closet. Garcia was not sure how long he remained in the closet, because he lost consciousness after being hit in the head.

At some point (while Garcia remained tied up in the closet) the second victim Osavas arrived at the house. Though Garcia could not see what was happening, he heard the screams of Osavas as he was being beaten.

Osavas testified that when he came into the house, it was dark. He was looking for his tool belt when co-defendant Dimitri Moise came up from

behind and hit Osavas with a baseball bat, knocking Osavas to the ground. Azin and Valle-Figueroa were also present. Azin picked Osavas up from the floor and hit him in the face with a pistol, causing Osavas' eye to instantly swell shut. Osavas fell to the floor again, and the three men held him down and bound his legs and hands with duct tape. They took his cellphone, wallet and car keys, and then dragged Osavas to another room, where the three men kicked, punched and beat him while accusing him of stealing the appliances from the house. Osavas sustained significant injuries, including a fractured knee.

The three men then put Osavas in a closet (a different closet than where Garcia was being kept) and Azin and the other two men returned to the closet several times to demand Osavas tell them where the stolen items were. Osavas denied stealing anything.

Azin then called the police. Garcia and Osavas were still tied up when the police arrived. The police initially arrested Garcia and Osavas for the alleged theft. Later, Azin and his two co-defendants were arrested. Azin was charged with two counts each of armed kidnapping, aggravated battery, and armed robbery.

After the State rested its case, Azin moved for a judgment of acquittal, which was denied. The defense presented no witnesses or other evidence,

4

and after resting, made its second motion for judgment of acquittal, which was also denied. Following closing arguments and jury instructions, the jury returned its verdict, finding Azin guilty of armed kidnapping of Garcia and of Osavas, aggravated battery with a firearm upon Garcia and upon Osavas, and simple battery upon Garcia and upon Osavas, as lesser-included offenses of armed robbery. Relevant to this appeal, Azin was sentenced, as described below on the four felony counts.[1]

**Kidnapping of Marvin Osavas (Count 7 of the Information):**

The jury expressly found by its verdict that, during the commission of the offense, Azin 1) did carry, display, use, threaten to use or attempt to use a weapon; and 2) did personally possess a firearm. The first finding reclassified the kidnapping from a first-degree felony punishable by life to a life felony pursuant to section 775.087(1)(a), Florida Statutes.[2] The second

---

[1] Much of this opinion addresses the sufficiency of the evidence to support the jury's finding that defendant possessed a firearm or weapon, and the resulting reclassification and enhanced sentencing consequences. This discussion does not affect the two simple battery convictions, which are each first-degree misdemeanors, for which the trial court sentenced defendant to time already served in the county jail.

[2] Section 775.087(1)(a), Florida Statutes (2017) provides in pertinent part:

> Unless otherwise provided by law, whenever a person is charged with a felony, except a felony in which the use of a weapon or firearm is an essential element, and during the commission of such felony the defendant carries, displays, uses, threatens to

5

finding required imposition of a mandatory-minimum ten-year sentence under the 10/20/Life statute, section 775.087(2)(a)1., Florida Statutes (2017).[3] The trial court imposed a ten-year mandatory-minimum sentence under the 10/20/Life statute, followed by five years' probation.

**<u>Kidnapping of Carlos Garcia (Count 8 of the Information):</u>**

Like Count 7, the jury expressly found by its verdict that, during the commission of the crime, Azin 1) did carry, display, use, threaten to use or attempt to use a weapon; and 2) did personally possess a firearm. The first finding reclassified the kidnapping from a first-degree felony punishable by life to a life felony pursuant to section 775.087(1)(a), Florida Statutes (2017). The second finding required imposition of a mandatory-minimum ten-year sentence under the 10/20/Life statute, section 775.087(2)(a)1., Florida

---

use, or attempts to use any weapon or firearm, or during the commission of such felony the defendant commits an aggravated battery, the felony for which the person is charged shall be reclassified as follows: (a) In the case of a felony of the first degree, to a life felony.

[3] Section 775.087(2)(a) 1., Florida Statutes (2017) provides in pertinent part:

Any person who is convicted of a felony or an attempt to commit a felony, regardless of whether the use of a weapon is an element of the felony, and the conviction was for. . . kidnapping and. . . during the commission of the offense, such person actually possessed a "firearm" or "destructive device" as those terms are defined in s. 790.001, shall be sentenced to a minimum term of imprisonment of 10 years.

Statutes (2017). The trial court imposed a ten-year, mandatory minimum sentence under the 10/20/Life statute, followed by five years' probation, to run concurrent with Count 7.

**Aggravated Battery with Deadly Weapon upon Marvin Osavas Causing Great Bodily Harm (Count 11 of the Information):**

The jury expressly found by its verdict that, during the commission of the offense, Azin did personally possess a firearm. The jury also found that defendant caused great bodily harm to Marvin Osavas. Because aggravated battery is one of the enumerated felonies under the 10/20/Life statute, the jury finding of personal possession of a firearm in the commission of this offense required imposition of a mandatory-minimum ten-year sentence under the 10/20/Life statute "regardless of whether the use of a weapon is an element of the felony." § 775.087(2)(a)1., Fla. Stat. (2017). Nevertheless, a review of the sentence establishes that the trial court imposed a concurrent, ten-year sentence that was not imposed as a mandatory minimum under section 775.087(2)(a)1. This sentence was ordered to run concurrently with the sentences imposed in Counts 7 and 8.

**Aggravated Battery with a Deadly Weapon upon Carlos Garcia (Count 12 of the Information):**

The jury expressly found by its verdict that, during the commission of the offense, Azin did personally possess a firearm. Because aggravated

battery is one of the enumerated felonies under the 10/20/Life statute, the jury finding of personal possession of a firearm in the commission of this offense required imposition of a mandatory-minimum ten-year sentence under the 10/20/Life statute "regardless of whether the use of a weapon is an element of the felony." § 775.087(2)(a)1., Fla. Stat. (2017). Nevertheless, a review of the sentence establishes that the trial court imposed a concurrent, ten-year sentence that was not imposed as a mandatory minimum under section 775.087(2)(a)1. This sentence was ordered to run concurrently with the sentences imposed in Counts 7, 8 and 11.

On appeal, Azin asserts, inter alia: 1) the evidence was legally insufficient to establish Azin committed armed kidnapping or aggravated battery with a firearm, because no firearm was ever recovered and (Azin contends), there was no evidence that the gun described by the victims met the legal definition of a firearm under section 790.001(9),[4] Florida Statutes

---

[4] Section 790.001(9) Florida Statutes (2017) provides in pertinent part:

> "Firearm" means any weapon (including a starter gun) which will, is designed to, or may readily be converted to expel a projectile by the action of an explosive. . . .

(2017); and 2) the trial court abused its discretion in denying the motion for new trial based on prosecutorial misconduct during closing argument.

**STANDARDS OF REVIEW**

Denial of the Motions for Judgment of Acquittal

"The denial of a motion for judgment of acquittal is reviewed de novo." Pagan v. State, 830 So. 2d 792, 803 (Fla. 2002). "A defendant, in moving for a judgment of acquittal, admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence." Lynch v. State, 293 So. 2d 44, 45 (Fla. 1974). "The conviction is supported by sufficient evidence where a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt after viewing the evidence in the light most favorable to the State." Knight v. State, 186 So. 3d 1005, 1012 (Fla. 2016).

Denial of the Motion for New Trial Based on Improper Closing Argument

Generally, the court reviews the propriety of comments made during closing argument (and new trial motion based upon such comments) for an abuse of discretion. Salazar v. State, 991 So. 2d 364, 377 (Fla. 2008). If the trial court erred in allowing the prosecutor to engage in improper argument, the burden is upon the State, as the beneficiary of such error, to establish

9

there is no reasonable probability that the improper comments affected the verdict, rendering any such error harmless.  Hitchcock v. State, 755 So. 2d 638, 643 (Fla. 2000).

As for those comments which are not objected to at trial or otherwise not properly preserved, "failing to raise a contemporaneous objection when improper closing argument comments are made waives any claim concerning such comments for appellate review. The sole exception to the general rule is where the unobjected-to comments rise to the level of fundamental error, which has been defined as error that 'reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Simpson v. State, 3 So. 3d 1135, 1146 (Fla. 2009) (quoting Brooks v. State, 762 So. 2d 879, 899 (Fla. 2000)).

## ANALYSIS AND DISCUSSION

Azin argues the evidence at trial was insufficient to support the finding that he personally possessed a "firearm" in the commission of these crimes, because the State failed to prove that the item used by Azin was a "weapon . . . which will, is designed to, or may readily be converted to expel a projectile by the action of an explosive. . . ." § 790.001(9), Fla. Stat. (2017). We reject Azin's argument for three separate reasons.

10

First, Azin never made this argument to the trial court, either in his motions for judgment of acquittal or in his motion for new trial. It is raised here for the first time and is thus unpreserved.[5]

In his first motion for judgment of acquittal,[6] Azin argued generally (as to all counts) that the State failed to establish a prima facie case. Such boilerplate motions are of course legally insufficient. See, e.g., Rodriguez v. State, 335 So. 3d 168, 172 (Fla. 3d DCA 2021) ("To preserve his sufficiency issue for appellate review, Rodriguez was required, in moving for judgment of acquittal below, to identify the element(s) of second-degree murder for which he contended the evidence was lacking. A boilerplate objection would not suffice.") (citations omitted).

---

[5] In fact, during defense closing, counsel did not even raise the question of whether the gun the victims testified Azin used was a "firearm"; rather, he argued in closing that Azin never used or possessed *any* gun, firearm or other weapon during the incident.

[6] The defense argued its two motions for judgment of acquittal back-to-back. The defense moved for its first judgment of acquittal after the State rested its case. The standard of proof at that point required the State to establish a prima facie case of guilt. See Jenkins v. State, 1 So. 3d 317, 320-21 (Fla. 3d DCA 2009). After the trial court denied this first motion, the defense advised the court it would not be presenting any witnesses or evidence, and thereafter argued its second motion for judgment of acquittal. The standard at that point was whether "viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt." If so, "sufficient evidence exists to sustain a conviction." Pagan v. State, 830 So. 2d 792, 803 (Fla. 2002).

11

The defense also argued at length that much of the testimony was in conflict, some of it favorable to the defense, and that the defense has shown "a severe lack of credibility from the State's witnesses. . . ." Such arguments go to the weight, rather than the legal sufficiency, of the evidence. In reviewing the sufficiency of the evidence presented at trial, "the concern on appeal must be whether, after all conflicts in the evidence and all reasonable inferences therefrom have been resolved in favor of the verdict on appeal, there is substantial, competent evidence to support the verdict and judgment. Legal sufficiency alone, as opposed to evidentiary weight, is the appropriate concern of an appellate tribunal." Tibbs v. State, 397 So. 2d 1120, 1123 (Fla. 1981).

As to the kidnapping counts, the defense argued additionally that "at a bare minimum [there] is a 50/50 amount of evidence as to whether [Azin] had a lawful authority" to kidnap the victims. As to both the aggravated battery counts and kidnapping counts, the defense also contended that Azin's actions were merely an attempt to defend himself and his property, having caught Garcia and Osavas actively burglarizing his home. While this was a theory of defense, there was no evidence presented to support this theory and, even if there was, it did not serve as a valid basis for entry of a judgment of acquittal.

12

The only firearm-related argument made by the defense during its two motions for judgment of acquittal was a credibility-based argument: that the victims did not initially tell police that Azin had a firearm, instead advising police of this hours later.  As with the other arguments, this attack focuses on the weight, rather than the legal sufficiency, of the evidence presented by the State.

By failing to preserve in the trial court the argument now raised on appeal, Azin has waived this alleged error. See Fla. R. Crim. P. 3.380(b) ("The motion [for judgment of acquittal] must fully set forth the grounds on which it is based."); Steinhorst v. State, 412 So. 2d 332, 338 (Fla. 1982) ("Except in cases of fundamental error, an appellate court will not consider an issue unless it was presented to the lower court. Furthermore, in order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below.") (citations omitted). See also Morales v. State, 170 So. 3d 63, 66 (Fla. 1st DCA 2015) ("Appellate courts have repeatedly declined to review the denial of a motion for judgment of acquittal where the motion failed to make the specific argument raised on appeal.")

Second, we reject Azin's alternative position that this alleged failure of proof is fundamental error warranting reversal.  See e.g., F.B. v. State, 852

13

So. 2d 226, 229-30 (Fla. 2003) ("[R]arely will an error be deemed fundamental, and the more general rule requiring a contemporaneous objection to preserve an issue for appellate review will usually apply. We find that the interests of justice are better served by applying this general rule to challenges to the sufficiency of the evidence. Any technical deficiency in proof may be readily addressed by timely objection or motion, thus allowing the State to correct the error, if indeed it is correctable, before the trial concludes."); State v. Smith, 241 So. 3d 53, 56 (Fla. 2018) (reaffirming that "[e]ven failure to prove an element of an offense . . . is not fundamental error in most cases" and noting that the Court has "recognize[d] only two circumstances in which a defendant is not required to preserve an objection to the sufficiency of the State's case: 'The first exception is based on the longstanding appellate rule under which, in death penalty cases, this Court is required to review the sufficiency of the evidence to support the conviction,' and the second exception applies where the State fails to prove that 'a crime was committed at all.'") (quoting F.B., 852 So. 2d at 230).

Third, and on the merits, while Azin is correct that no firearm was recovered, we conclude that the State nevertheless presented sufficient evidence, together with the reasonable inferences therefrom, for a jury to properly conclude that Azin possessed and used a firearm in the commission

14

of the kidnapping and aggravated battery offenses, thus supporting the reclassification[7] of these offenses and the imposition of a ten-year mandatory-minimum sentence. Pagan, 830 So. 2d at 803 ("A defendant, in moving for a judgment of acquittal, admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence.")

The evidence supporting this conclusion includes the following testimony by the victims:

**Marvin Osavas testified:**

● Moise hit Osavas with a bat, and Osavas fell to the ground. "[Azin] kind of tried to pick me up. When I faced him, he slapped me in my face with a pistol. Instantly this eye just closed."

---

[7] We note parenthetically that, even if the evidence supported only a finding that Azin carried, displayed or used a weapon or deadly weapon (as opposed to a firearm), the offenses would still be reclassified to a higher degree felony under section 775.087(1)(a) ("Unless otherwise provided by law, whenever a person is charged with a felony, except a felony in which the use of a weapon or firearm is an essential element, and during the commission of such felony the defendant carries, displays, uses, threatens to use, or attempts to use any weapon or firearm, or during the commission of such felony the defendant commits an aggravated battery, the felony for which the person is charged shall be reclassified. . . ."), though a finding of actual possession of a firearm is required to impose the mandatory-minimum ten-year sentence under 775.087(2)(a)1.

15

● The firearm that Azin hit Osavas in the face with "was a black handgun."

● "At some point, Bahram [Azin] got really upset. He grabbed me by the hair and he-- **he pointed a gun in my forehead, and told me if I wouldn't give him his stuff, he was going to kill me.**" (Emphasis added.)

● Azin "slapped me with a pistol on my face."

In addition, Osavas answered "yes" to defense counsel's question on cross examination: "You testified on direct examination that you were hit by a firearm or a handgun?"

**Carlos Garcia testified:**

● When Garcia was attacked, Azin came in the house with a "hand gun in his hand," a "black gun that fitted in his hand, small" and knocked Garcia to the ground.

● Azin "put the gun inside my mouth."

● Azin hit Garcia in the face with a gun.

● The gun used by Azin was a "small gun" that looks like the ones cops use.

This above-described testimony by the two victims—and especially Osavas' testimony that Azin "pointed a gun in my forehead, and told me if I

wouldn't give him his stuff, he was going to kill me"—provided direct and circumstantial evidence from which a jury could reasonably conclude that, during the commission of the kidnapping and aggravated battery offenses, Azin "carrie[d], display[ed], use[d], threaten[ed] to use, or attempt[ed] to use" a firearm (satisfying the reclassification provision of section 775.087(1)(a)) and "actually possessed a 'firearm'" (satisfying the ten-year mandatory-minimum provision under section 775.087(2)(a)1.). See, e.g., T.T. v. State, 459 So. 2d 471, 472 (Fla. 1st DCA 1984) ("Both victims testified that appellant held an object which appeared to be a gun. When [defendant] accosted the first victim, he threatened, 'Give me the money or I'll blow your brains out.' While being pursued by the second victim, [defendant] stopped, turned, pointed the object toward the victim and shouted, 'Stop or I'll shoot.'… This additional evidence proves more than a subjective belief by the victims that the object was a firearm.") See also O'Brien v. State, 546 So. 2d 32, 33 (Fla. 3d DCA 1989) (affirming the trial court's order denying motion for postconviction relief from conviction for armed robbery with a firearm, where the only evidence that defendant was armed with a firearm was the victim's testimony that, during the robbery, defendant "lifted his shirt thereby revealing the handle of a gun protruding from his waistband. On cross-examination the witness indicated that she had only seen guns in movies.");

17

Akins v. State, 838 So. 2d 637, 639 (Fla. 5th DCA 2003) (holding that "the victim's testimony that she thought the weapon was a sawed-off shotgun, coupled with Akins's nonverbal implication that he would use it against the victim, sufficed to support a finding that Akins possessed a firearm during the robbery."); Flowers v. State, 738 So. 2d 412, 413 (Fla. 5th DCA 1999) (finding evidence sufficient for jury to reasonably conclude that what defendant possessed during the commission of the crimes was a firearm: "Although no weapons were recovered, the victim testified that he was certain that the appellant and the appellant's accomplice both had guns. The victim, moreover, testified that the appellant walked within five feet of him, pointed the gun in his direction, and ordered him on the floor. Even without the introduction of the weapon into evidence, or of any evidence of gunfire, there was sufficient evidence presented to sustain appellant's convictions."); Crump v. State, 629 So. 2d 231, 232-34 (Fla. 5th DCA 1993) (finding direct and circumstantial evidence sufficient to support conviction for robbery with a firearm, where victim testified defendant had a "silver gun"; co-defendant testified defendant carried a small silver automatic gun; and co-defendant called out to defendant to shoot the victim after the victim shot at him).

## Motion for New Trial for Improper Closing Argument

As to the second issue, the comments complained of by Azin include statements by the prosecutor that the victims "told the truth" when testifying. We reject Azin's contention that this was improper vouching or bolstering. In context, these statements do not reflect that the prosecutor was vouching for the victims or expressing a personal belief in the victims' credibility. As our courts have recognized, "improper vouching or bolstering occurs when the State 'places the prestige of the government behind the witness or indicates that information not presented to the jury supports the witness's testimony.'" Jackson v. State, 147 So. 3d 469, 486 (Fla. 2014) (quoting Wade v. State, 41 So. 3d 857, 869 (Fla. 2010)).

In the instant case, by contrast, the prosecutor was responding to defense counsel's theory of defense, which focused on attacking the victims' credibility and motives. During cross-examination of one of the victims, the defense directly suggested one of the victims was lying to the jury. The prosecution was certainly permitted to anticipate the defense would continue to advance this theory in its closing argument, and to counter it during its closing argument. Gonzalez v. State, 136 So. 3d 1125, 1141 (Fla. 2014) (prosecutor's statements in opening statement in anticipation of the defense's theory of the case that the State's witnesses were not worthy of

19

belief was not error). <u>Braddy v. State</u>, 111 So. 3d 810, 839 (Fla. 2012) (holding State's comments were not improper because they were in "fair rebuttal" and "a legitimate inference based in the evidence produced at trial."); <u>Williams v. State</u>, 225 So. 3d 349 (Fla. 3d DCA 2017); <u>Johnson v. State</u>, 917 So. 2d 226 (Fla. 3d DCA 2005).

Further, the prosecutor was not merely *asserting that* the jury should believe the victims' testimony; the prosecutor was *explaining why* the jury should believe the victims' testimony. As an example of these allegedly improper arguments, Azin points to the prosecutor's statement that the victim Marvin Osavas "swore under oath to tell the truth, and that's what he did." But read in context with the discussion that preceded it, this was not improper vouching. The State was discussing the evidence presented and why that evidence should lead the jury to conclude that Osavas was worthy of belief.

This falls squarely within the scope of permissible closing argument, as an attorney is certainly allowed to discuss the factors to be considered by the jury in assessing witness credibility and offer his or her argument, based on those factors, that the witnesses were truthful in their testimony. <u>See, e.g.</u>, Std. J. Inst. (Crim.) 3.9 (Weighing the Evidence) (instructing jury on factors it should consider in assessing witness credibility). <u>See also Williamson v. State</u>, 994 So. 2d 1000, 1013 (Fla. 2008) (noting that "while

20

the prosecutor suggested [the State witness'] testimony was credible, this was a fair reply to the defense's closing argument that [the witness'] testimony was not believable. Immediately after this statement, the prosecutor asked the jury to think about [the witness'] demeanor and how he answered the questions, encouraging the jurors to rely on their own impressions as to the witness's credibility.")

Azin points to other, similar statements by the prosecutor during closing, but each is similarly permissible in context, or was not preserved by a proper or contemporaneous objection, and as such is waived. Simpson, 3 So. 3d at 1146 (noting generally that "failing to raise a contemporaneous objection when improper closing argument comments are made waives any claim concerning such comments for appellate review.") We further find that the unpreserved comments, considered cumulatively, do not constitute fundamental error.

In addition, Azin argues that the prosecutor committed prejudicial error in its rebuttal by suggesting that Azin retaliated against two illegal immigrants who would be too scared to come forward:

> [B]ahram Azin did kidnap Carlos Garcia and Marvin Osavas. He did tie them up, take them, and put them away in a closet and in a laundry room, and continuously beat them, torturing them for what felt like years, but it was hours. He did take their wallets, take their phones and he did beat them senseless causing them very serious injuries that you saw on those photos, that you heard from that stand. And at the

beginning of this trial, I stood up here and I told you that on May 26, 2017, **Bahram Azin thought that he was above the law. He looked at Carlos and Marvin just like they've been saying as two immigrants who would be too scared to come forward.**

(Emphasis added).

The defense objected and the court sustained the objection and directed the State to "move on." However, the defense did not move for a mistrial, either following the court's ruling or at the end of the State's rebuttal closing, thereby waiving the issue for appeal unless the comment constitutes fundamental error.  State v. Cumbie, 380 So. 2d 1031 (Fla. 1980) (holding defendant who objects to prosecutor's comment in final argument must make a motion for mistrial at some point during closing argument or, at the latest, at the conclusion of the prosecutor's argument); cf. Roundtree v. State, 362 So. 2d 1347, 1348 (Fla. 1978) (where defense counsel objected and asked that improper comment be stricken from the record and court sustained objection and granted his request, "the trial court gave [the defendant] exactly what he requested, and he is not now in a position to complain. . . . By allowing the trial to proceed, he waived his right to raise this issue on appeal.") As with the other unpreserved claims, even when considered together, Azin has failed to show that such errors "rise to the level of fundamental error, which has been defined as error that 'reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have

22

been obtained without the assistance of the alleged error.'" <u>Brooks</u>, 762 So.

2d at 899 (citations omitted).[8]

      Affirmed.

---

[8] We find no merit in the remaining arguments raised by Azin.